**In re William M. ELDER, Debtor.**

**William M. ELDER, Plaintiff,**

v.

**CITY OF THOMASVILLE, GEORGIA and Causeway Lumber Company of Boca Raton, Inc., Defendants.**

**Bankruptcy No. 81–60026–THOM.**

**Adv. No. 81–6028–THOM.**

United States Bankruptcy Court, M. D. Georgia, Thomasville Division.

July 10, 1981.

Ronald A. Cohen, Thomasville, Ga., for debtor/plaintiff.

Charles H. Watt, III, Thomasville, Ga., for Causeway Lumber Co. of Boca Raton, Inc./defendant.

B. B. Earle, Jr., Thomasville, Ga., for City of Thomasville, Ga./defendant.

Charles A. Gower, Columbus, Ga., Chapter 7 trustee.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

ALGIE M. MOSELEY, Jr., Bankruptcy Judge.

Garnishment was begun prior to bankruptcy. Garnishor and Garnishee knew of

the bankruptcy one day after bankruptcy was filed. Essentially, both continued as if no bankruptcy had been filed. Debtor sought aid of Bankruptcy Court, and herein both are found to be in violation of the automatic stay and required to pay attorney's fees to Debtor's attorney.

### FINDINGS OF FACT

1. On July 21, 1975, default judgment was taken and entered on the General Execution Docket of the Superior Court of Thomas County, Georgia in favor of Causeway Lumber Company of Boca Raton, Inc. (Creditor) against William M. Elder, Sr. (Debtor) in the principal amount of $6,997.52.

2. On February 25, 1981, continuing garnishment proceedings (Ga.Code 46–701) were filed in Thomas County Superior Court against Debtor and his employer, the City of Thomasville, Georgia (City).

3. On March 19, 1981, Debtor filed a voluntary petition in bankruptcy under Chapter 7.

4. On April 20, 1981, the usual notice of bankruptcy was mailed to creditors from the Clerk of the Bankruptcy Court. Copy of same was mailed to Causeway Lumber Company of Boca Raton, Inc. at Post Office Box 248, Boca Raton, Florida 33432. The first meeting of creditors [341(a)] was held on May 5, 1981, and no creditors attended.

5. By letter dated March 19, 1981 from Debtor's attorney to Charles A. Watt, III, Attorney for Creditor, Creditor was notified of the filing of the voluntary petition in bankruptcy, and the letter was received by Mr. Watt on March 20, 1981.

6. By letter dated March 19, 1981 from Debtor's attorney to Mr. John Baxter, City Manager for City of Thomasville, City was notified of the filing of the voluntary petition in bankruptcy.

7. City did not appear in the schedules of the Debtor, and, accordingly, no notice of the bankruptcy was mailed from the Clerk's Office to City.

8. On March 25, 1981, Mr. B. B. Earle, Jr., City Attorney for City, received a copy of the March 19, 1981 letter to Mr. John Baxter.

9. On April 1, 1981, the City Attorney had a conference with the Assistant City Attorney and Mr. Watt, Attorney for the Creditor, concerning disposition of city funds in response to the garnishment.

10. On April 10, 1981, Defendant filed its first answer to the garnishment which indicated that $301.50 had been withheld from Debtor's pay and said sum was forwarded to the Superior Court of Thomas County. The answer further stated that City had been notified by the Attorney for the Debtor that a petition for bankruptcy had been filed on March 19, 1981.

11. On May 11, 1981, Attorney for the Creditor, Mr. Watt, received a notice of the bankruptcy mailed from the Clerk's Office to the Creditor at Boca Raton, Florida—the notice had remained in the office of the Creditor at Boca Raton, Florida for more than two weeks before being forwarded to Mr. Watt.

12. On May 25, 1981, City filed and served its second answer of continuing garnishment and paid $301.50 to Superior Court of Thomas County, Georgia plus pension fund money amounting to $3,025.72, as the Debtor was no longer employed by City.

13. On May 6, 1981, Debtor filed a complaint wherein the City of Thomasville, Georgia and Causeway Lumber Company of Boca Raton, Inc. were named Defendants and in which Debtor sought all the funds withheld be returned to him and that attorney's fees be assessed against the City of Thomasville, Georgia. A trial was scheduled on this complaint and held on June 3, 1981 at which time the Court heard from counsel for the respective parties.

14. After the hearing, the Court requested briefs on two issues: (1) did or did not Creditor, Causeway Lumber Company, Inc. and Garnishee, City of Thomasville, either or both violate the automatic stay of 11 U.S.C. § 362; (2) whether counsel for the Debtor should be awarded attorney's fees.

APPLICABLE LAW

11 U.S.C. § 362(a)

"(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title operates as a stay, applicable to all entities, of—

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of this case under this title;

(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;"

Commenting on this automatic stay, Collier on Bankruptcy (15th Ed.) ¶ 362.03 says:

"¶ 362.03. Effective Date of Stay and Notice.

Except as provided in subsection (b), which contains various exceptions to the automatic stay, the stay is effective upon the date of the filing of the petition, whether voluntary, joint, or involuntary, and formal service of process will not be required."

and at ¶ 362.11

"¶ 362.11. Violation of the Stay.

As discussed above the automatic stay of section 362 is effective upon the date of the filing of the petition, whether voluntary, joint, or involuntary, and formal service of process is not required. *Actions taken in violation of the stay are void and without effect...*" [Citations in footnote are omitted]. (Emphasis added).

and at ¶ 362.04[2]

"[2]—Enforcement of Judgments. § 362(a)(2).

Paragraph 2 stays the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the bankruptcy case. Levy and execution against the prepetition assets are stayed as well as attempts to collect or enforce the judgment against the debtor personally, ..."

and at ¶ 362.04[5]

"[5]—Acts To Create, Perfect or Enforce any Lien Against Property of the Debtor. § 362(a)(5).

Paragraph (5) stays acts to create, perfect or enforce liens securing pre-petition claims against property of the debtor as distinguished from property of the estate. Such property would include property acquired after the date of the filing of the petition, exempt property, abandoned property and property which does not become a part of the estate such as the debtor's beneficial interest in a spendthrift trust. The purpose of the stay is to prevent preferential treatment of certain creditors and circumvention of the discharge."

The following are quotes from the legislative history of the automatic stay, 11 U.S.C. § 362:

"§ 362. Automatic stay

The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy."

"Paragraph (2) stays the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the bankruptcy case. Thus, execution and levy against the debtors' prepetition property are stayed, and attempts to collect a judgment from the debtor personally are stayed."

"*Paragraph (5) stays any act to create or enforce a lien against property of the*

*debtor*, that is, most property that is acquired after the date of the filing of the petition, property that is exempted, or property that does not pass to the estate, *to the extent that the lien secures a prepetition claim.* Again, to permit post-bankruptcy lien creation or enforcement would permit certain creditors to receive preferential treatment. It may also circumvent the debtors' discharge." (Emphasis added).

H.R. Rep. No. 595, 95th Cong., 1st Sess., pp. 340, 341 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6296, 6297.

## CONCLUSIONS OF LAW

1. Creditor, Causeway Lumber Company, Inc. violated the automatic stay of 11 U.S.C. § 362.

2. Garnishee, City of Thomasville, violated the automatic stay of 11 U.S.C. § 362.

3. Attorney's fees should be awarded Attorney for Debtor in the amount of $500, $250 from City and $250 from Creditor.

4. This will not be dealt with as contempt but pursuant to 11 U.S.C. § 105 which provides that "the bankruptcy court may issue any order, process, or judgment that is necessary to carry out the provisions of this title."

## DISCUSSION

The ultimate question under the facts in this case is: Who is suppose to stop the downhill snowballing of a continuing garnishment so that the automatic stay under 11 U.S.C. § 362 is effective? It is set in motion by creditor and thereafter impetus is added by activities required by state law of the garnishee and of the state court.

The automatic stay at 11 U.S.C. § 362(a) is intended to stop the snowballing, and all who have a part in the garnishment must take such positive action as necessary to give effect to the automatic stay. No action is unacceptable; no action is action to thwart the effectiveness of the automatic stay.

The only thing that the debtor can do is to make certain that all entities involved know about the filing of the bankruptcy case which automatically invokes the stay. The facts disclose that all entities were aware of the pending bankruptcy in ample time to give effect to the automatic stay. Each choose to do nothing with the result that City continued to periodically deduct from Debtor's wages, the very thing that the automatic stay was intended to avoid.

It might be suggested that the Debtor should have sought the aid of the Bankruptcy Court. This is exactly what the automatic stay, 11 U.S.C. § 362, intended to avoid. The automatic stay is really not new. It has been a part of the Bankruptcy Rules of Procedure (Rule 401 and 601) since 1973. In 1978 Congress enlarged this rule and incorporated it in the Bankruptcy Reform Act of 1978 as 11 U.S.C. § 362. The automatic stay was to be self-operating without each case being brought to the court for an injunction or stay order. In a case under the old Act it was stated in *David v. Hooker*, 560 F.2d 412, 417 (9th Cir. 1977)

"First, the basic purpose of Rule 401(2) is to protect the bankrupt and to relieve the courts from pointless and needless litigation."

The basic purpose of Rule 401(a) and the automatic stay at 11 U.S.C. § 362 would be frustrated if the debtor had to involve the court in each situation as here. It would continuously involve the court in pointless and needless litigation. In the facts of this case it is not the Court that should stop the snowball.

Part of what is stayed in 11 U.S.C. § 362 is "continuation." Garnishment involves a creditor, a garnishee, and a court. Creditor sets in motion the process. Creditor is in the driver's seat and very much controls what is done thereafter if it chooses. If the "continuation" is to be stayed, it cannot choose to do nothing and pass the buck to the garnishee or the court in which the garnishment is filed to effectuate the stay. Positive action on the part of the creditor is necessary so that "continuation" may be stayed.

The creditor can stop the snowball by dismissing the garnishment. In these facts this is the practical thing to do as the Creditor would reap no benefits, and this has been what creditors have done since the advent of the automatic stay in 1973. If not dismissal, then creditor should stay garnishment by advising the state court personnel and the garnishee that until further notice by reason of the automatic stay funds withheld by garnishee or on hand with the court should be surrendered to the debtor and that garnishee should not withhold any further sums and the state court should receive no further sums. In the facts in this case positive action by the Creditor is necessary to stop the snowball and to give effect to the 11 U.S.C. § 362.

The garnishee on hearing, from whatever source, that a bankruptcy is pending should pay over to the debtor all sums withheld and not further withhold funds from debtor's wages. The garnishee may communicate with the office of the clerk of the bankruptcy court if it questions the accuracy of its source of information that a bankruptcy case has been filed. The garnishee can answer the garnishment by reciting that a bankruptcy case has been filed giving the case number and referring to the automatic stay at 11 U.S.C. § 362. In the facts of this case positive action from the Garnishee is necessary to stop the snowball and to give effect to 11 U.S.C. § 362.

Persons in the state court such as clerks, marshalls, sheriffs, etc., on learning, from whatever source, that a bankruptcy case is pending should pay over to the debtor all sums on hand and refuse to accept further sums from the garnishee. In the facts of this case positive action from the garnishee. In the facts of this case positive action from persons in the state court is necessary to give effect to 11 U.S.C. § 362 to stop the snowball.

If there are other entities involved, they too are subject to the automatic stay because "all entities" as used in 11 U.S.C. § 362 is all inclusive in the facts in this case. ("Entities" is defined in 11 U.S.C. § 101[14] which includes "persons" defined in 11 U.S.C. § 101[30]).

"V.

The filing of a bankruptcy petition stays all creditors from performing any act to create, perfect or enforce any lien against property of the estate and property of the debtor. 11 U.S.C. section 362(a)(4) and (5) (1978). cf. *Muller v. Nugent*, 184 U.S. 1, 15, 22 S.Ct. 269, 275, 46 L.Ed. 405 (1902) (filing of a bankruptcy petition is a caveat to all the world, and in effect an attachment and judgment). *The stay is effective upon the date of the filing of the petition, and formal service is not required.* See 2 Collier on Bankruptcy, ¶ 362.03, 362–26 (15th ed. 1979). *Actions taken in violation of the stay are void even when there is no actual notice of the existence of the stay.* Kalb v. Feuerstein, 308 U.S. 433, 60 S.Ct. 343, 84 L.Ed. 370 (1940); *Zestee Foods, Inc. v. Phillips Foods Corp.*, 536 F.2d 334 (10th Cir. 1976); *Meyer v. Rowen*, 181 F.2d 715, 716 (10th Cir. 1950); *In re Potts*, 142 F.2d 883 (6th Cir. 1944) cert. denied 324 U.S. 868, 65 S.Ct. 910, 89 L.Ed. 1423 (1945); *See generally 2 Collier on Bankruptcy*, ¶ 362.11 (15th ed. 1979). (Emphasis added).

*In re Eisenberg*, (Bkrtcy., N.Y.1980) 7 B.R. 683, 686. Accordingly, the actions taken subsequent to March 19, 1981 by persons in the Superior Court, the City and the Creditor were void and without effect.

In the instant case only the City (Garnishee) and Creditor are defendants. Garnishment was filed February 25, 1981. Bankruptcy was filed March 19, 1981. Notice of bankruptcy was mailed from the Clerk's Office on April 20, 1981. Creditor received notice a few days later but retained it in its office, and its attorney did not receive it until May 11, 1981. City never received notice from the Clerk's Office. On March 19, 1981, the bankruptcy case was filed and the automatic stay became effective. On March 20, by letter of March 19 from Debtor's attorney, the City and Creditor knew of the pending bankruptcy of the Debtor. On March 25, 1981,

the City Attorney for City of Thomasville knew of the pending bankruptcy. On April 1, 1981, attorneys for the City and Creditor had a conference about the pending garnishment. It is clear that City and Creditor knew of the bankruptcy a few days after it was filed. Nevertheless, with this knowledge City, with concurrence of Creditor (April 1, 1981 conference), paid into Superior Court on April 10, 1981 (three weeks after knowledge of bankruptcy) some $301.50 withheld from the Debtor's pay and again on May 25, 1981 $301.50 and the pension money. It should be noted that this last payment into Superior Court was 19 days after the filing of the complaint which began this proceeding and nine weeks after knowledge of bankruptcy.

The action of Creditor in not taking action to dismiss or delay the actions of City or Superior Court was also in violation of the automatic stay, 11 U.S.C. § 362. The actions of Superior Court in receiving funds and the actions of the City in withholding funds and paying into Superior Court were all done after the filing of the bankruptcy (March 19, 1981) in violation of the automatic stay, 11 U.S.C. § 362, and were void. (See *Collier* above and *Eizenberg* above).

On the date of bankruptcy no funds had been paid into Superior Court. The funds paid by City and received by Superior Court on April 10 and May 25 were void acts. All funds in the custody of Superior Court should be paid to the Debtor, and any funds in custody of City should be delivered to Debtor. Any funds received by Creditor subsequent to March 19, 1981 should be delivered to Debtor.

The situation here might be dealt with as contempt.

"[1] Considering the matter of contempt first, it is well to state at the outset that a willful violation of the automatic stay may subject punishment for contempt of court. This was true even before the adoption of the Code. Thus, in case of *Fidelity Mortgage Investors Co. v. Camelia Builders, Inc.,* 550 F.2d 47 (2d Cir. 1976), cert. den., 429 U.S. 1093, 97 S.Ct. 1107, 51 L.Ed.2d 540, reh. den., 430 U.S. 976, 97 S.Ct. 1670, 52 L.Ed.2d 372, the attorneys for the party who disregarded the prohibition of the automatic stay imposed by Bankruptcy Rule 11–44 were fined $25,000 for filing a complaint in a State Court after the commencement of the arrangement proceeding against a Debtor involved in an arrangement proceeding. The fine imposed was sanctioned by the Court of Appeals for the Second Circuit even though the attorneys who filed the suit were never notified officially of the pendency of the bankruptcy proceeding, but only learned of that proceeding from an article published by the Wall Street Journal."

*In the Matter of Raymond Construction Company of Florida, Inc.,* (Bkrtcy., M.D.Fla. 1980) 6 B.R. 793. In the circumstances here, this Court is more interested in seeing to it that "the provisions of this title" are carried out than it is in contempt. See 11 U.S.C. § 105. In particular it is interested in carrying out the provision of the automatic stay at 11 U.S.C. § 362. For the part played by Debtor's attorney in aiding this Court "to carry out the provisions of this title," City shall pay to him $250 as attorney's fees and Creditor also shall pay $250 to him as attorney's fees. This is nominal considering his efforts before bringing the matter to the attention of the Court by the filing of the complaint, the preparation and filing of the complaint, briefs filed in support of the complaint, and a 300-mile trip (roundtrip) from Thomasville, Georgia to Columbus, Georgia. Should City or Creditor desire a formal hearing on the amount of the attorney's fees, the Court will schedule one.

An Order is entered simultaneously herewith.