In re Guido R. PROIA, Marsha A. Proia, Debtors.

NATIONAL INDEMNITY COMPANY, Plaintiff,

v.

Guido R. PROIA, Marsha A. Proia, Defendants.

Bankruptcy No. 8100582.
Adv. No. 810374.

United States District Court,
D. Rhode Island.

Nov. 30, 1983.

Victoria M. Almeida, Gunning, LaFazia & Gnys, Inc., Providence, R.I., for plaintiff.

Russell D. Raskin, Providence, R.I., for defendants.

## ORDER

PETTINE, Senior District Judge.

After hearing before Arthur N. Votolato, Jr., United States Bankruptcy Judge for the District of Rhode Island, upon the motion of National Indemnity Company for sanctions, and after the submission of findings and conclusions which I have reviewed and adopt pursuant to Local Rule 53(E)(2)(a), it is ordered that:

The defendants Guido R. and Marsha A. Proia are determined to be jointly and severally liable to National Indemnity Company in the amount of $750.00, and are ordered to pay the same to the plaintiff forthwith; and the defendants' attorney, Russell Raskin, Esq., is determined to be liable to National Indemnity Company in the additional amount of $750.00, and is ordered to pay the same to the plaintiff forthwith.

## FINDINGS, CONCLUSIONS, AND PROPOSED ORDER AWARD-ING SANCTIONS

ARTHUR N. VOTOLATO, Jr., Bankruptcy Judge.

Plaintiff National Indemnity Company (National) has moved for the imposition of sanctions against the debtors, Guido and Marsha Proia, because National has incurred substantial expenses in attempting both to protect its interests and to demonstrate that the Proias have intentionally "distort[ed] their true financial status." Memorandum in Support of Motion for Sanctions at 4. The debtors deny any intentional wrongdoing and contend that they should not be subject to sanctions for ignorance or carelessness.

The relevant facts are briefly summarized as follows:[1]

1. On April 20, 1981, less than three months prior to filing their joint Chapter 7 petition, the Proias reported to police the theft of a 1978 GMC stake body truck, which they alleged had been stolen that day. National, which insured the vehicle, paid the Proias $5,400 in settlement of this theft claim.

2. On July 14, 1981, the Proias filed their Chapter 7 petition. Listed on Schedule B–2 was the 1978 truck, previously reported as stolen.

3. On September 24, 1981, less than three months after they filed this petition, the Proias reported a burglary at their home, and filed with Warwick Police a lengthy list of missing items, as follows:

Gorham Service for 12 sterling silverware set

19″ Sony color TV portable

1 mink stole

Gorham Crystal 2 wine decanters

Jewelry 8 items 14k gold and diamonds

Jewelry music box

1 rope chain 14k gold

1 rope bracelet 14k gold

35 m/m Camera with lens (Rollei)

1 flat chain serpentine 14k

1 flat necklace 14k

---

1. This opinion constitutes the findings of fact and conclusions of law required by Bankruptcy

Rule 7052.

1 engagement diamond ring 14k white gold .85 ct.

1 man's gold watch

1 chain and cross men's

1 pair 14k gold dolphin earrings

1 recorder radio Panasonic AM–FM stereo

Only two of these items, the color television set and a "stereo" with a market value of $25, are listed in the debtors' schedule of assets. The debtors received $5,132 from the Prudential Insurance Company in settlement of this theft claim. The testimony of Guido and Marsha Proia is in conflict regarding how the proceeds of the two controversial theft claims were used, but it is clear that the proceeds of at least one of the claims were used to pay *unscheduled* debts to relatives.

4. On November 19, 1981, National filed a complaint for relief from the automatic stay to reclaim the truck which was listed on the debtors' schedules, and for which National had already paid the Proias on account of the alleged theft. A series of pre-trial conferences followed, on January 6, February 9, and March 11, 1982. These conferences are memorable for the confusion left by debtors' counsel with respect to the facts allegedly giving rise to National's complaint.

5. In May and July 1982 the debtors filed motions to amend their schedules to reflect the theft of the truck and the items stolen in the alleged burglary. Because of an "oversight" by the debtors' attorney, National received no notice of the motion to amend the schedules to delete the 1978 GMC truck. On that ground, National objected to the entry of said order.[2]

6. At a hearing on August 3, 1982, to compel the debtors to answer questions posed but unanswered at their deposition, the Court warned the debtors of the possibility that sanctions might be imposed against them because of their demonstrated and continued reluctance to respond to the legitimate inquiry of creditors.

7. On December 2, 1982, at a hearing on the debtors' motion to amend their schedules, Guido Proia testified that he "forgot" to tell his attorney (who had done preparatory work on the petition and schedules approximately one year before they were filed) that his truck had been stolen. Incredibly, Mr. Proia also testified that although he and his wife owned all the items stolen in the September 24, 1981 burglary at the time of filing their petition some two months earlier, he did not schedule these items because his attorney did not ask about them.[3] Equally as incredibly, Marsha Proia testified that the stolen property was not scheduled because all of the stolen items were gifts, and she did not believe that gifts were assets. Mrs. Proia also testified that she forgot to inform her attorney of the stolen truck, and that she used the proceeds of at least one of the two insurance settlements to pay unscheduled debts to relatives. That hearing ended with the Court ordering the debtors, once and for all, to correct their schedules in all respects. It also ended with the Court giving no credence to the testimony of either debtor.

8. On December 9, 1982, a hearing was held to determine the accuracy of the debtors' schedules.[4] At this time the debtors' attorney testified that he met with the Proias about two months prior to filing their petition, and that he had made a notation in the Proias' file, "all his stuff was stolen." Counsel had a vague recollection

---

2. In a letter dated September 23, 1982, the debtors' attorney apologized to National's counsel for inadvertently failing to send her a copy of the motion to amend the Proias' schedules to delete the truck. Some two months earlier, on July 22, 1982, the debtors' attorney had sent another letter of apology regarding interrogatories which had been "sent to [her] in error," and which had necessitated the filing of an objection by National.

3. This testimony, if rejected, creates serious problems for Guido Proia, because it looks like

perjury. If said testimony is accepted, then there are serious problems for debtors' attorney for, at the very least, permitting to be filed false and inaccurate schedules. Based on the travel and flavor of this case from the outset, the excuse of careless neglect or omission is not available to either the debtors or their attorney.

4. This extraordinary but necessary proceeding is so unusual that it is the first such hearing conducted by this Court since 1968.

388

that "all his stuff" referred to the debtors' truck.[5] Debtors' attorney testified that to the best of his knowledge, the amended schedules were now accurate. National asserted that the schedules were still inaccurate, and pressed its previously filed motion for sanctions.

9. On December 16, 1982, the debtors again moved to amend their schedules, this time for leave to include the proceeds of National's payment of the theft claim regarding their truck, and to add a list of fourteen items stolen in the alleged burglary.

10. On January 12, 1983, the debtors filed "Corrected Amended Schedules" which added two more items stolen in the burglary, and two creditors (a relative and a friend) with unsecured claims totalling $10,500.

Probably National is correct when it alleges that "all of these facts constitute a design and intention on the part of the Proias to confuse and distort their true financial status," and that the Proias committed perjury and "false swearing in a written document." Memorandum in Support of Motion for Sanctions at 4. We suggest, however, that there are other agencies or forums more appropriately suited to determine whether the Proias engaged in criminal conduct and/or are subject to the penalties prescribed in 18 U.S.C. § 152 and in other relevant statutes.

The narrower issue before this Court is whether the conduct of the Proias (and their attorney) was such that National should be compensated for the expense it has incurred in these proceedings. The Court finds that the debtors have at a minimum displayed a "reckless indifference to the truth," which has been characterized by one court as "the equivalent of fraud." *Diorio v. Kreisler-Borg Construction Co.,* 407 F.2d 1330, 1331 (2d Cir.1969). The reckless indifference to the truth exhibited

throughout this proceeding has caused and in fact required National to expend an extraordinary amount of time which would not have been necessary had the debtors been more forthright and honest in filing their schedules, and had they and their attorney been more diligent and less dilatory in the performance of their duties in this case. If it were not for the persistence of National's attorney, it is almost certain that the schedules would have remained seriously inaccurate and false.

Although it is difficult to apportion blame in these circumstances, counsel for the debtors, who is an experienced and busy practitioner before this Court, shares responsibility for the disturbing lack of candor which has been present throughout these proceedings. In addition to being an advocate charged with the protection of his clients' rights, debtors' counsel is also an officer of the Court. As such, diligence, accuracy, and promptness in correcting inadvertent errors are some of the qualities expected of counsel. None of those qualities has been demonstrated by the attorney for the debtors here. The Court admonishes the Proias' attorney and warns him that future conduct of the kind exhibited in this proceeding will result in disciplinary action more severe than the sanctions imposed upon him in this case.

Section 105(a) of the Bankruptcy Code provides that "[t]he bankruptcy court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." The Court concludes, based on the entire record, that the "necessary or appropriate" action in this proceeding is to require the Proias to pay $750 and their attorney to pay $750 of the total attorney's fees of $1,939 incurred by National.[6] While I see no precise method of calculating the proportion of National's attorney's fees which resulted from the Proias' demonstrated aversion to telling the

5. It is troubling, but typically consistent in this proceeding, that debtors' counsel would have a notation regarding the theft in his records, and approximately two months later would assist the debtors in filing a Statement of Financial Affairs in which they deny having "suffered any losses from ... theft ... during the year immediately preceding."

6. Another Bankruptcy Court that assessed counsel fees against two parties also relied on 11 U.S.C. § 105(a) as a source of its authority to so act. *Elder v. City of Thomasville, Georgia (In re Elder),* 12 B.R. 491, 496, 7 B.C.D. 1153, 1157, 4 C.B.C.2d 1092, 1099 (Bkrtcy.M.D.Ga. 1981).

truth, or from their attorney's extraordinary behavior and from his (and the Proias') delay in amending the schedules, the legal services attributable to the actions and inactions of the Proias and their counsel must amount to at least $1500.

Accordingly, National's motion for sanctions is granted, and the Proias and their counsel are each ordered to pay National $750.

It is uncertain whether this Court has the power to enter such orders or judgments without review by the United States District Court for the District of Rhode Island. Accordingly, pursuant to Local Rule 53, § (E)(2)(a), this Court certifies to the District Court that circumstances require that this order be approved by a district judge.