**In re ETCH–ART, INC., Debtor.**

**Bankruptcy No. 8400097.**

United States Bankruptcy Court,
D. Rhode Island.

March 29, 1985.

Edward J. Bertozzi, Jr., Edwards & Angell, Providence, R.I., for Leach & Garner Co.

John H. Hines, Jr., Providence, R.I., for debtor.

ARTHUR N. VOTOLATO, Jr., Bankruptcy Judge.

This Chapter 11 case was filed on February 16, 1984, and before long, on April 12, a hearing was being held on Leach & Garner's motion for an order to show cause why the then debtor-in-possession, Etch-Art, Inc., and its principal, Nancy Ronci, should not be adjudged in contempt for willful violation of: (1) 11 U.S.C. § 363(c), which prohibits the unauthorized use of cash collateral; and (2) this Court's order of February 29, 1984, enjoining Etch-Art and "all persons" associated with the company from using or disposing of "any interest in any gold inventory, any proceeds of inventory, [and] any proceeds of accounts receivable."

At the conclusion of the April 12 hearing the parties waived oral argument and agreed to file written memoranda within ten days. Because, in our view, the record was inconclusive, and because each memorandum raised arguments which were not addressed by the other side, on June 12, 1984, we ordered the parties to file supplemental briefs and to address a number of questions framed by the Court. L & G filed its response within the time allowed, and when more than 20 days elapsed, with nothing from Etch-Art, the Court informed Etch-Art's attorney that the imposition of sanctions would be considered if its response was not filed by July 6.[1]  Curiously,

---

1. Etch-Art consented to conversion of this case to Chapter 7 on April 12, 1984, but at the time of the events in question the case was still in Chapter 11, with the debtor in exclusive possession, so that the actions complained of by L & G, if true, took on added significance with the pas-

although Etch-Art's memorandum was allegedly mailed to both L & G and the United States Trustee on July 6, a copy was hand-delivered to the Court on July 9, three days after the second deadline imposed by the Court. Also, Etch-Art's attorney flatly refused to answer two specific questions posed by the Court on the ground that "L & G and not Etch-Art, has both the burden of proof and the burden of persuasion." Response of Etch-Art to Court Order of June 12, 1984, at 4. Counsel's motive in choosing not to respond to the Court's specific inquiries remains a mystery. In any event we have done our best, based on the record, to resolve the issues as presented.

With respect to the allegation of willful contempt, the judicial contempt power has been described as "an awesome one [which] should be reserved for actions showing a ... clearly contumacious frame of mind," *Revere Copper Products, Inc. v. Hudson River Sloop Clearwater, Inc. (In re Revere Copper and Brass, Inc.)*, 29 B.R. 584, 589 (Bankr.S.D.N.Y.1983), and a "drastic remedy which should be invoked only when the right to its use is clear." *Pal Transport, Inc. v. All Florida Recovery Agency, Inc. (In re Pal Transport, Inc.)*, 13 B.R. 935, 941 (Bankr.M.D.Fla.1981) (citation omitted).

■ To meet the burden of proof in an action for civil contempt, one must present a case with "clear and convincing" evidence. *Perfect Fit Industries, Inc. v. Acme Quilting Co., Inc.*, 646 F.2d 800, 808 (2d Cir.1981); *Powell v. Ward*, 643 F.2d 924, 931 (2d Cir.1981) (citations omitted). Furthermore, a compensatory fine, which appears to be the remedy sought by L & G, "must of course be based upon evidence of complainant's actual loss." *United States v. United Mine Workers of America*, 330

U.S. 258, 304, 67 S.Ct. 677, 701, 91 L.Ed. 884 (1947). Leach & Garner's burden, therefore, is a considerable one: it must not only prove contempt by clear and convincing evidence, but must demonstrate its "actual loss" suffered as a result of Etch-Art's and Nancy Ronci's actions.

L & G contends that Etch-Art and "its President and sole owner," Nancy Ronci, should be adjudged "in civil contempt of this Court for using cash collateral in willful violation of § 363(c) of the Bankruptcy Code, the temporary restraining order entered by this Court, and an agreement between the parties." Brief in Support of L & G's Motion for Order to Adjudge in Contempt at 1.

Section 363(c) of the Bankruptcy Code provides that cash collateral (defined in § 363(a)) may not be used without court authorization, or consent of all creditors having any interest in such collateral.[2] In this case, the debtor did not use cash collateral with authorization from either the Court or creditors. Indeed, on February 29, 1984, the date of our temporary restraining order prohibiting the debtor's use of cash collateral, Etch-Art filed an "Application for Use of Cash Collateral and Interim Operating Authority." Furthermore, at a pre-trial conference held on the same date, counsel for Etch-Art conceded that the debtor had been using cash collateral in the form of accounts receivable without L & G's consent, but with the assurance that this was only an inadvertent violation of § 363. He then informed the Court and L & G's counsel that the debtor would stop using cash collateral, pending a hearing and decision.

A hearing on the debtor's application to use cash collateral commenced the next day, on March 1, 1984, and that hearing

sage of time being acquired through counsel's delay.

2. Section 363(c)(2) of the Bankruptcy Code provides as follows:

(2) The trustee may not use, sell, or lease cash collateral under paragraph (1) of this subsection unless—

(A) each entity that has an interest in such cash collateral consents; or

(B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.

was adjourned with this concluding statement by the Court:

> I will continue this [hearing] to four o'clock on Monday [March 5], with the restraining order remaining in effect as long as we have disputes in the nature of five hundred thousand versus seventeen thousand [dollars], and a two thousand five hundred dollar offer on the insurance claim.[3] ... I know I can't lift the stay.

Tr. at 46–47.

In view of this explicit extension of the temporary restraining order, the Court is puzzled, but also disturbed by the debtor's counsel's repeated statements in his post-trial memoranda that the temporary restraining order expired after ten days.[4]

■ On April 6, L & G filed the instant contempt motion against Etch-Art, alleging that the debtor was again, or still, using cash collateral. On that date the Court entered an order to show cause why Etch-Art and Nancy Ronci "should not be found in contempt of 11 U.S.C. 363 and this Court's order of February 29, 1984...." and that matter was scheduled for hearing on April 12, 1984. At the hearing on the order to show cause, it was evident that some cash collateral had been improperly used by the debtor, but it was not shown by clear and convincing evidence that the debtor and/or Nancy Ronci had been guilty of willful contempt, or that *"all of the cash* disbursed by Etch-Art [after February 29, 1984] was proceeds from accounts receivable and therefore constituted cash collateral." (emphasis added.) Brief in Support of L & G's Motion for Order to Adjudge in Civil Contempt at 3. Therefore, because of the inconclusive record in this case, and the failure of L & G to establish two essential elements of its case, we reluctantly conclude that the debtor's and Nancy Ronci's failure to comply with either the February 29 temporary restraining order or with 11 U.S.C. Section 363(c), does not quite constitute willful contempt,[5] and that a finding by us to the contrary would not withstand appellate scrutiny. *In re Pal Transport, Inc., supra,* 13 B.R. at 941.

Partly responsible for this apparently anomalous result is L & G's failure to adequately address the main defenses raised by Etch-Art: (1) "that the after-acquired property clause relied upon and necessary with respect to the Motion of L & G had no validity after February 16, 1984, the date of filing of Debtor's Chapter 11 petition," Memorandum in Opposition to L & G's Motion for Order to Adjudge Civil Contempt at 4; and (2) that while the temporary restraining order was in effect Etch-Art "used 'toll gold accounts' in the ordinary course of business for its cash flow." Response of Etch-Art to our Order of July 12, 1984, at 2.

In reply to Etch-Art's argument concerning the validity of the after-acquired property clause, L & G contends that 11 U.S.C. Section 552(b) "provides that L & G's security interest in debtor's pre-petition accounts and inventory continues ... and extends as well to post-petition proceeds of such accounts and inventory." L & G's Memorandum in Response to Order of June 12, 1984, at 5–6. We are not, however, satisfied that *all* of the funds in question are proceeds of "property of the debtor acquired *before* the commencement of the case." (emphasis added.) *See* 11 U.S.C. Section 552(b).[6] For example, assuming ar-

---

**3.** This latter figure refers to a disputed claim against the debtor's insurance carrier over the amount of a theft loss allegedly sustained by the debtor in September 1983.

**4.** On March 15, 1984, counsel withdrew the application to use cash collateral.

**5.** Because of the finding that Leach & Garner has failed to establish that Etch-Art, Inc. and Nancy Ronci should be adjudged in contempt, we do not decide the threshold question of whether non-Article III courts possess the power to punish for contempt. *See, e.g., Lindsey v. Cryts (In re Cox Cotton Co.),* 24 B.R. 930, 9 B.C.D. 1176 (E.D.Ark.1982).

**6.** Section 552(b) provides:

> (b) Except as provided in sections 363, 506(c), 544, 545, 547, and 548 of this title, if the debtor and a secured party enter into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property

guendo that L & G has a security interest in post-petition proceeds resulting from fabrication of toll gold, L & G has ignored such important questions as when the toll gold was acquired, and whether the fabrication was performed pre-petition or post-petition.

With respect to Etch-Art's second (toll gold) argument, L & G contends that "irrespective of the origin of its receivables, Etch-Art violated this [temporary restraining] order by disbursing 'proceeds of accounts receivable'." L & G's Brief in Support of Motion to Adjudge in Civil Contempt, at 15. Except for this unsubstantiated assertion, L & G has offered nothing to support a finding that it has an interest in *all* post-petition accounts receivable.

According to the testimony of Nancy Ronci concerning toll gold, where the customer owns and furnishes gold which Etch-Art fabricates and returns, the accounts receivable balances of such customers reflect only the amount charged for Etch-Art's labor and do not include any charge for materials owned and supplied by the customer. Under 11 U.S.C. § 552(b), it is unlikely that L & G's security interest would extend to receivables generated by materials acquired post-petition and processed into finished inventory during the operation of the Chapter 11 case. The burden is on L & G to distinguish between receivables which are the result of post-petition toll gold accounts (which presumably are not covered by L & G's security interest), and those receivables which *might* be covered by L & G's security interest. *See Harmsen v. Smith*, 693 F.2d 932 (9th Cir. 1982), *cert. denied*, —— U.S. ——, 104 S.Ct. 89, 78 L.Ed.2d 97 (1983) (although damages need not be proven to a mathematical certainty, sufficient facts should be present so that the court can arrive at an intelligent estimate, without speculation or conjecture). Based upon the evidence presented,

L & G has fallen short, and with these wide gaps in the record a finding of willful contempt cannot be supported.

However, and notwithstanding L & G's failure to prove *willful* misconduct, or the precise extent thereof, it is clear that Etch-Art, through its principal, Nancy Ronci, has improperly used some cash collateral in which L & G has an interest. In these circumstances, we are not powerless to attempt to determine the extent to which collateral was improperly used, or to redress the Etch-Art/Ronci post-petition misdeeds by the entry of an appropriate award of money damages. The Court may award compensation to a wronged party, absent a finding of contempt, provided there is evidence of the complainant's actual loss. *See, e.g., National Indemnity Co. v. Proia (In re Proia)*, 35 B.R. 385 (Bankr.D.R.I. 1983); *Elder v. City of Thomasville (In re Elder)*, 12 B.R. 491 (Bankr.M.D.Ga.1981).

As noted earlier, even after a thorough review of the transcript and exhibits, we are unable to estimate with reasonable certainty or accuracy the damages sustained by L & G as a result of the debtor's and Ronci's misconduct. Leach & Garner's failure to establish the extent of its losses resulting from the debtor's improper use of cash collateral is highlighted by its argument that "it is reasonable to *infer* that post-petition receivables would have amounted to at least ... $23,556.59," or that "it can be reasonably *inferred* that the amount of pre-petition receivables collected by the debtor was at least $66,016.59 ...." (emphasis added.) L & G's Memorandum in Response to Order of June 12, 1984, at 6. The inferences which L & G asks this Court to draw ignore consideration of post-petition toll gold accounts, which we think may not be included in determining damages sustained by L & G. Close scrutiny of the exhibits provides no clue by which to distinguish receivables generated by collat-

of the debtor acquired before the commencement of the case and to proceeds, product, offspring, rents, or profits of such property, then such security interest extends to such proceeds, product, offspring, rents, or profits acquired by the estate after the commence-

ment of the case to the extent provided by such security agreement and by applicable non-bankruptcy law, except to the extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise.

eral in which L & G has an interest, from those generated through the servicing of post-petition toll-gold accounts, to which L & G may have no claim, and as the record stands the amount by which L & G has been damaged by the debtor's improper use of cash collateral is most speculative. On the other hand, we know that some cookies are missing from the jar, and that Nancy Ronci should be ordered to put some back, but we don't know how many.

This places the Court in a dilemma, because while in the interest of judicial economy sophisticated litigants such as L & G should be required and limited to stating their best and most complete case the first time around, to avoid serious injustice here we are compelled to permit a further opportunity for L & G to substantiate the extent of the unauthorized use of its collateral.

For the reasons stated, the motion of Leach & Garner Co. to adjudge Etch-Art, Inc. and Nancy Ronci in contempt is denied, without prejudice, but the matter should be re-opened for further hearing on the issue of damages.

In aid of this order, and to avoid the possibility of a second inconclusive hearing because of failure of proof, the parties are directed to conduct whatever discovery is required to specifically define and identify the factual and legal issues to be tried, and to prepare a detailed joint pre-trial order, to be filed at least one week prior to the date set for hearing. The parties are directed to appear at a scheduling conference on April 11, 1985, at 3:30 p.m. in order to implement this decision.

Enter judgment accordingly.