**In re Ramona Denise DUNGEY, Debtor.**

**Bankruptcy No. 2–88–06544.**

United States Bankruptcy Court, S.D. Ohio, E.D.

May 2, 1989.

Herbert L. Lawrence, Columbus, Ohio, for debtor.

Norman M. Frank, Columbus, Ohio, for Beneficial Financial, Inc.

Charles M. Caldwell, Office of U.S. Trustee, Asst. U.S. Trustee, Columbus, Ohio.

OPINION AND ORDER

R. GUY COLE, Jr., Bankruptcy Judge.

### I. *Preliminary Statement*

This matter is before the Court upon the motion for sanctions ("Motion") filed by Ramona Denise Dungey, the debtor in this Chapter 7 case ("Debtor"). Debtor's Motion seeks monetary damages and the imposition of sanctions against Bencharge Credit Service ("Bencharge"). This contested matter came on for hearing on April 25, 1989. The Court has jurisdiction over this case pursuant to 28 U.S.C. § 1334(b) and the General Order of Reference entered in this district. This is a core proceeding which the Court is empowered to hear and determine in accordance with 28 U.S.C. § 157(b)(1) and (2)(A), (E) and (G). *See, Budget Service Company v. Better Homes of Virginia,* 804 F.2d 289 (4th Cir.1986). The following Opinion and Order shall constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule ("B.R.") 7052.

### II. *Factual Findings*

1. Debtor filed a petition under Chapter 7 of the Bankruptcy Code on December 21, 1988;

2. The schedules accompanying Debtor's petition listed Bencharge and The Living Room ("Living Room") as holders of claims against the Debtor. There is no dispute that Bencharge and Living Room received notice of the filing of Debtor's Chapter 7 bankruptcy case from the Bankruptcy Clerk;

3. Prior to the filing of her bankruptcy petition, Living Room and Bencharge had instituted separate collection actions and received judgments against the Debtor in the Franklin County Municipal Court. In connection therewith, both Bencharge and Living Room caused Affidavits and Orders of Garnishment of Personal Earnings ("Garnishment Order") to be entered by the Franklin County Municipal Court. The date upon which Living Room filed its Garnishment Order is unknown. Bencharge filed its Garnishment Order with the Municipal Court on December 16, 1988;

4. Pursuant to the Garnishment Order filed by Bencharge, a deduction of approximately $140 was made from the January, 1989, paycheck issued to Debtor by her employer, The Ohio State University Hospitals. A garnishment withholding in the amount of approximately $122 also was made from Debtor's February, 1989, paycheck as a result of the Garnishment Order previously filed by Living Room. This latter amount was returned to Debtor in full after a demand for turnover of the garnished funds was made by Debtor's counsel. Bencharge has retained the $140 garnisheed from the Debtor's wages which remain in the custody of its counsel, Norman M. Frank ("Frank"); and

5. On February 1, 1989, Debtor personally filed a handwritten suggestion of stay with the Franklin County Municipal Court. The suggestion of stay reflects that it was served upon Bencharge.

### III. *Conclusions of Law*

Section 362 of the Bankruptcy Code generally provides for the automatic stay of any and all proceedings against the debtor once a bankruptcy petition is filed. The automatic stay's importance is echoed in the legislative history of § 362, which provides in pertinent part that:

> The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.

H.R.Rep. No. 595, 95th Cong. 1st Sess. 340–42 (1977); S.Rep. No. 989, 95th Cong.

2d Sess. 54–55 (1978); *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787 at 5840 and 6296–97. The consequences of violating the automatic stay provisions are set forth in § 362(h), which provides that:

> "[A]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and in appropriate circumstances, may recover punitive damages."

11 U.S.C. § 362(h); *Archer v. Macomb County Bank,* 853 F.2d 497, 499 (6th Cir. 1988); *In re Holman,* 92 B.R. 764, 767–68 (Bankr.S.D.Ohio 1988).

■ Actions by creditors to collect a debt from the debtor, which are taken after the filing of a bankruptcy petition, are void *ab initio* and of no legal effect. *See, Kalb v. Feuerstein,* 308 U.S. 433, 60 S.Ct. 343, 84 L.Ed. 370 (1940); *Borg–Warner Acceptance Corp. v. Hall,* 685 F.2d 1306 (11th Cir.1982); *In re Eisenberg,* 7 B.R. 683 (Bankr.E.D.N.Y.1980). Such actions are invalid even though the creditor had no notice of the bankruptcy filing. *In re Miller,* 10 B.R. 778 (Bankr.D.Md.1981), *aff'd.,* 22 B.R. 479 (D.Md.1982); *In re Stephen W. Grosse, P.C.,* 68 B.R. 847 (Bankr.E.D.Pa. 1987). Lack of notice on the part of the creditor of the bankruptcy case means only that his action was not willful and, therefore, not contemptuous. *See, Fidelity Mortgage Investors v. Camelia Builders, Inc.,* 550 F.2d 47 (2d Cir.1976), *cert. denied,* 429 U.S. 1093, 97 S.Ct. 1107, 51 L.Ed.2d 540 (1977); *Matter of Endres,* 12 B.R. 404 (Bankr.E.D.Wis.1981).

■ A creditor who has initiated collection action without knowledge of a bankruptcy petition has an affirmative duty to restore the *status quo* without the debtor having to seek relief from the Bankruptcy Court. *See, Miller,* 10 B.R. at 780, *aff'd.,* 22 B.R. 479, 481 (D.Md.1982); *Endres,* 12 B.R. at 406 (holding that "refusal to return the property upon learning of the proceeding is a willful violation of the stay provisions and may be contemptible"); *Wariner v. First State Bank of Livingston (In re Wariner),* 16 B.R. 216, 218 (Bankr.N.D. Tex.1981) ("creditor has an affirmative

duty to return the property and restore the status quo once it learns its actions violated the stay"); *Matter of Clark,* 60 B.R. 13, 14 (Bankr.N.D.Ohio 1986) ("creditor who violates the automatic stay has an affirmative duty to return the property and restore the status quo once it learns its actions violate the stay"); *Grosse,* 68 B.R. at 850 ("creditor should undo its postpetition collection activities without the debtor having to seek affirmative relief from bankruptcy court"). The rationale which underpins this sound rule of law was aptly summarized by the district court in its affirmance of the bankruptcy judge's imposition of sanctions in *Miller* 10 B.R. 778:

> The courts have been quick to realize that creditor inaction can often be as disruptive to the debtor as affirmative collection efforts. *E.g., In re Elder,* 12 B.R. 491, 494 (Bankr.M.D.Ga.1981) ("No action is unacceptable; no action is action to thwart the effectiveness of the automatic stay.") In recognition of this problem, creditors have been required, when necessary, to take affirmative steps to restore the status quo at the time of the filing of the petition for relief. *See In re Norton,* 15 B.R. 627 (Bankr.E.D.Pa.1981) (retention of tax refund by I.R.S. held contemptuous); *In re Howren,* 10 B.R. 303 (Bankr.D.Kan.1981) (withholding by university of debtor's transcript violated automatic stay); *In re Eisenberg,* 7 B.R. 683 (Bankr.E.D.N.Y.1980) (refusal by city to withdraw tax lien from tax lien sale contemptuous). To place the onus on the debtor, as the Bank would have the Court do, to take affirmative legal steps to recover property seized in violation of the stay would subject the debtor to the financial pressures the automatic stay was designed to temporarily abate, and render the contemplated breathing spell from his creditors illusory.

22 B.R. at 481.

■ Bencharge asserts that because the garnishment was commenced on a prepetition basis, its conduct should not be found to be contemptuous. Inasmuch as it took no affirmative collection action postpetition, Bencharge argues, the imposition of

sanctions pursuant to 11 U.S.C. § 362(h) would not be appropriate. This argument is patently absurd. As the foregoing discussion has demonstrated, a creditor has an affirmative obligation to halt all collection activity and restore the *status quo* which was altered by its actions upon learning of the filing of a bankruptcy petition. This rule is derived from the plain language of § 362(a)(1) of the Code which stays "the commencement or *continuation* ... of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of a case under this title...." 11 U.S.C. § 362(a)(1) (emphasis added). Courts construing the foregoing language in the context of a garnishment proceeding have held that "[a]t whatever stage the garnishment is, the creditor's attorney must do everything he can to halt the proceeding." *O'Connor v. Methodist Hospital of Jonesboro, Inc. (In re O'Connor)*, 42 B.R. 390, 392 (Bankr.E.D.Ark. 1984). The rationale underlying this rule was articulated in *Elder v. City of Thomasville, Georgia (In re Elder)*, 12 B.R. 491, 494–95 (Bankr.M.D.Ga.1981), wherein the bankruptcy court stated:

> Part of what is stayed in 11 U.S.C. § 362 is "continuation." Garnishment involves a creditor, a garnishee, and a court. Creditor sets in motion the process. Creditor is in the driver's seat and very much controls what is done thereafter if it chooses. If the "continuation" is to be stayed, it cannot choose to do nothing and pass the buck to the garnishee or the court in which the garnishment is filed to effectuate the stay. Positive action on the part of the creditor is necessary so that "continuation" may be stayed.
>
> The creditor can stop the snowball by dismissing the garnishment. In these facts this is the practical thing to do as the creditor would reap no benefits, and this has been what creditors have done since the advent of the automatic stay in 1973. If not dismissal, then creditors should stay garnishment by advising the state court personnel and the garnishee that until further notice by reason of the automatic stay funds withheld by gar-

> nishee or on hand with the court should be surrendered to the debtor and the garnishee should not withhold any further sums and the state court should receive no further sums.... [P]ositive action by the creditor is necessary to stop the snowball and to give effect to 11 U.S.C. § 362.

Our sister court has also addressed the issue of a creditor's duties in connection with termination of a prepetition garnishment in *Mitchell v. Quality Plant Services, Inc. (In re Mitchell)*, 66 B.R. 73 (Bankr. S.D.Ohio 1986). In *Mitchell*, Judge Perlman rejected precisely the same argument asserted by Bencharge here:

> At the hearing, Gay [the creditor] asserted the position that he was not in violation of the automatic stay because he did nothing further with respect to garnishment after the filing of the bankruptcy case. He contended that he had no obligation to take steps to cause the withholding by ... [debtor's] employer on account of the garnishment to stop.
>
> ....
>
> We simply do not see how it is possible to avoid application of the plain language of ... [11 U.S.C. § 362(a)] which enjoins "the ... continuation ... of a judicial ... proceeding against the debtor." If one is enjoined from continuing a judicial proceeding against the debtor, one is obliged to discontinue it. It seems to us the question presented to us is as simple as that. The statute is plain and unambiguous, and where that is the case it is not necessary to resort to aids for its construction. The same outcome which we have indicated was reached by the court in *In re Elder, supra*. It is difficult to read *In re O'Connor, supra*, as inconsistent with the *Elder* case when the court in *O'Connor* says: "At whatever stage the garnishment is, the creditor's attorney must do everything he can to halt the proceeding."

66 B.R. at 75. The *Mitchell* court went on to award damages for violation of the automatic stay including reasonable attorney fees that the debtor incurred in connection with bringing the contempt motion. *See*

*also, Matter of Dennis,* 17 B.R. 558 (Bankr.M.D.Ga.1982) (automatic stay is violated unless the creditor takes affirmative action to dismiss the garnishment upon learning of the bankruptcy).

Based upon the law and the uncontraverted facts of this case, the contemptuous nature of Bencharge's conduct is readily apparent. Bencharge refused to discontinue its garnishment action after receiving notice of the filing of Debtor's Chapter 7 bankruptcy case, despite an affirmative obligation to halt the commencement or continuation of collection activity. Debtor filed the Motion on March 1, 1989; yet nearly four months after Bencharge caused her wages to be garnisheed, and now nearly two months following the filing of the Motion, Frank continues to hold the garnisheed wages in his possession and under his control. Thus, Debtor has been deprived of $140 in wages for nearly four months as a result of Bencharge's actions.

Bencharge's lame assertions to the contrary, the Court finds it difficult to conceive of a more willful or wanton violation of the automatic stay. Accordingly, the Court finds that Bencharge is guilty of a willful violation of the automatic stay within the meaning of 11 U.S.C. § 362(h). Bencharge is hereby ORDERED to immediately return the garnisheed wages to the Debtor. Further, compensatory damages in the amount of $580.21 are hereby awarded to the Debtor. This sum is comprised of the $330.21 in legal fees incurred by the Debtor in filing her Motion and an additional $250 in attorney fees for Debtor's counsel's time in attending the hearing on this matter—Debtor's counsel was present in the Courtroom for approximately two and one-half hours ($250 in legal fees) in connection with the Motion.

The $580.21 in compensatory damages is allocated between Bencharge and Living Room as follows: Bencharge is hereby ORDERED to pay Debtor $480.21 in compensatory damages and Living Room is ORDERED to pay Debtor $100 in compensatory damages. A review of Debtor's counsel's itemized fee statement reflects that he spent approximately one hour of time (and Debtor therefore incurred $100 in attorney fees) in obtaining the return of the wages wrongfully garnisheed by Living Room. His remaining time ($480.21 in attorney fees) was spent in prosecuting the Motion against Bencharge. Debtor's Motion also sought damages for "additional embarrassment ... humiliation; [and] financial shortage." And, Debtor presumably was required to miss work and therefore suffer lost wages in order to attend the hearing on her Motion. However, no evidence to support an award of damages for embarrassment, humiliation, financial shortage or lost wages was received. Thus, no additional compensatory damages shall be awarded.

Finally, the Court observes that while no request for punitive damages was made, given the egregious nature of Bencharge's conduct, it is appropriate to award punitive damages in this case. *In re Depew,* 51 B.R. 1010, 1014–15 (Bankr.E.D.Tenn.1985); *Aponte v. Aungst (In re Aponte),* 82 B.R. 738, 742 (Bankr.E.D.Pa.1988). Such an award should serve to deter Bencharge from engaging in similar activity in the future—*i.e.,* conduct which is flagrantly violative of the automatic stay. Accordingly, punitive damages in the amount of $100 are hereby awarded against Bencharge. Because Living Room purged its contempt prior to Debtor's filing of the Motion, punitive damages will not be imposed against it.

Based upon the foregoing, the Court hereby ORDERS that:

1. Bencharge immediately turn over to Debtor the approximately $140 in garnisheed funds in the possession of Frank;

2. Living Room pay Debtor the sum of $100 in compensatory damages; and

3. Bencharge pay Debtor the sum of $480.21 in compensatory damages and $100 in punitive damages.

IT IS SO ORDERED.