In re John & Mari–Jane DUNN, Debtors.

Bankruptcy No. 93–13059.

United States Bankruptcy Court,
D. New Hampshire.

Feb. 13, 1996.

Darlene M. Daniele, Salem, NH, for debtor.

Wendall Livingston, Becket & Watkins, Malvern, PA, for MBNA America successor to Maryland Bank, NA.

Laura L. Deorocki, Plunkett & Plunkett, Salem, MA, for Salem 5¢ Savings Bank.

Lawrence P. Sumski, Trustee, Amherst, NH.

### ORDER ON MOTION FOR SANCTIONS FOR VIOLATION OF AUTOMATIC STAY

JAMES E. YACOS, Chief Judge.

This Chapter 13 case came before the Court for hearing on November 27, 1995 and for a continued hearing on January 26, 1996, and for oral argument on February 6, 1996 on the debtors' Motion for Sanctions for Violation of Automatic Stay, and an Objection thereto, filed by Salem Five Cents Savings Bank. The debtors claim that the Salem Five Cents Savings Bank ("Salem Bank") violated the automatic stay provisions of the Bankruptcy Code by taking actions post-confirmation to collect prepetition debt contrary to the provisions of the Chapter 13 Plan and the Confirming Order dated April 8, 1994. The debtors seek damages and sanctions under Section 362(h) of the Bankruptcy Code, which provides:

"An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."

11 U.S.C. § 362(h).

All parties present having been heard, and the Court having been fully apprised of this matter, it is hereby

ORDERED, ADJUDGED, and DECREED as follows:

1. At the conclusion of the hearing on oral arguments, the Court dictated its detailed findings of fact and rulings of law into the record, and the Court hereby incorporates the same into this written Order by reference. The key findings and conclusions are repeated and summarized below.

2. The movants, the debtors herein, have the burden of proof with regard to showing that there was a violation of the automatic stay, that the violation was willful, that the willful violation caused the movants to suffer harm and incur damages, and then to show what relief is appropriate.

3. The record indicates that in March of 1994 the Salem Bank did attempt to collect both pre- and post-petition taxes directly from the debtors. This was in conflict with the provisions of the Chapter 13 Plan and the Confirming Order, under which the Salem Bank would receive payment for the taxes from the debtors' payments to the trustee. It is obvious that the Salem Bank could not collect twice for the unpaid prepetition property taxes and, therefore, to the extent that the March 8, 1994 letter from Salem bank to the debtors indicated such an intent, and to the extent that such an intent continued post-confirmation, the Salem Bank violated the automatic stay.

4. The debtors have failed to meet their burden of proof to show that the events between May of 1994 and October of 1994 constituted an attempt by the Salem Bank to collect prepetition taxes contrary to the debtors' Chapter 13 Plan, because the debtors failed to show that Salem Bank's conduct was not attributable to post-petition defaults by the debtors. The clouds around the facts of this case increased in August when the debtors unilaterally decided through their counsel not to make any further payments to the

Salem Bank, and the Salem Bank started showing arrearages post-petition of substantial amounts because it obviously was not getting any payments.

In addition, the debtors' Chapter 13 Plan added to the confusion because it was not precise in terms of what was required by the Salem Bank. The Plan provides that the Salem Bank's arrearages of approximately $25,000 will be paid through the Plan. The Town of Pelham has property tax arrearages of $2,635.00, which the Salem Bank would obviously have to cover at some time or lose its collateral. The debtors' plan simply did not require that the Town of Pelham be paid by the trustee directly, but instead provided that, "[T]his debt is included in the mortgage arrearages". As the Court can conclude from the entire record now that simply was inaccurate, because it is clear that the bank had not advanced the funds for those town taxes by the time of confirmation in April 1994 and therefore the debt was not included in the mortgage arrearages.

■ 5. The bank's violation in March of 1994 is willful in the sense intended by the law, because the Salem Bank was aware of this bankruptcy case, aware of the Chapter 13 Plan that was filed in November of 1993 and confirmed on April 8, 1994, and the bank had to be aware that the filing of the bankruptcy petition instituted an automatic stay of all proceedings under section 362. Therefore, the Court will find and conclude that the violation by the March 1994 event, and the continuing violation until the Salem Bank corrected it, was a willful violation of the automatic stay within the meaning of Section 362(h) of the Bankruptcy Code.

■ 6. The Court finds that the debtors have not proven any damages in this matter, because the debtors got themselves a moratorium for two years, and because if they have any damage in this case in my judgment it has been the incurrence of attorney's fees to get this matter straightened out.

■ 7. The Court finds no basis for punitive damages in this case because, although Salem Bank's action was willful, I do not find it to be a demonstrative action of a continuing scheme to collect prepetition debts that

would have gone into effect had the debtors not raised a question about it. I am not satisfied that Salem Bank, when it realized what was happening, would have in fact tried to collect double payments of the property taxes. This case is unlike the situation in *In re McCormack,* where the Court found that the bank fully intended to try to collect the prepetition attorney's fees that had already been disallowed by the Court in the confirming order. *See In re Paul B. McCormack,* Bk. No. ·91–1487–JEY, *McCormack v. Fed. Home Loan Mort. Corp. for Chase Manhattan Mort. Corp.,* slip op. (Dec. 28, 1995).

■ 8. That leaves for decision whether the Bank should be liable for fees of the attorney for the debtors in bringing this matter, both for the attorney's activity prior to commencing the litigation herein and the activity in this litigation. With regard to the activity in this litigation, I conclude that Salem Bank is not liable for the debtors' attorney's fees, for the reasons enunciated at the conclusion of oral argument, including the reason that after the communication and information exchanged by and between the debtors and the bank in the period from March 1994 through August of 1994, the debtors and the debtors' attorney should have had sufficient information to analyze for themselves their position vis-a-vis the bank.

■ 9. The Court does conclude that Salem Bank shall be liable for the debtors' attorney's fees for the period of March 1994 through August 1994 when, due to the bank's own rather confusing accounting procedures, it was necessary for the debtors to have the services of an attorney to determine what the bank was doing.

10. On or before *March 15, 1996,* the attorneys for the bank and for the debtors shall submit a stipulated order for entry of attorneys' fees and costs for the time incurred by the debtors' attorney from March of 1994 to August of 1994, based on the debtors' attorney's time records. Such fees and costs shall not encompass any time the debtors' attorney spent on matters other than the attempt to resolve the escrow account issue. If the parties fail to submit such stipulated order by the above deadline,

the Court will set this matter for a further supplemental hearing for that purpose.

DONE and ORDERED.