**In re Julene SUCRE, Debtor.**

**Julene SUCRE, Plaintiff,**

v.

**MIC LEASING CORP., Defendant.**

**Bankruptcy No. 95 B 44784 AJG.**
**Adversary No. 96–8536 AJG.**

United States Bankruptcy Court,
S.D. New York.

Sept. 30, 1998.

Tara R. Goffney, of Counsel, The Bronx, New York, for Plaintiff.

Simon, Wasserman & Weinberg, Edward H. Weinberg, of Counsel, Great Neck, New York, for Defendant.

### MEMORANDUM DECISION AND OR-DER ON MOTIONS FOR SUMMARY JUDGMENT REGARDING 11 U.S.C. §§ 547 AND 362(h)

ARTHUR J. GONZALEZ, Bankruptcy Judge.

Julene Sucre, the debtor, commenced this adversary proceeding on May 2, 1996, seek-

ing (1) pursuant to § 547 of title 11 of the United States Code (the "Bankruptcy Code"), to avoid and recover certain transfers made to the defendant MIC Leasing Corporation ("MIC Leasing") under a Wage Execution, (2) pursuant to §§ 522 and 549 of the Bankruptcy Code, or as a remedy for MIC Leasing's alleged contempt, to avoid and recover postpetition garnishments made pursuant to the Wage Execution, and (3) pursuant to § 362(h) of the Bankruptcy Code, to recover actual damages, including reasonable attorneys' fees and costs, resulting from the postpetition garnishment of her wages. On November 22, 1996, MIC Leasing filed a motion for summary judgment pursuant to Fed.R.Civ.P. 56(b) and (e), seeking dismissal of the §§ 547 and 362(h) causes of action. Ms. Sucre opposed the motion and moved for summary judgment with regard to her request for damages pursuant to § 362(h).[1] On March 27, 1997, the Court held a hearing, at which time it granted MIC Leasing's motion with regard to the § 547 cause of action and directed the parties to file supplemental pleadings regarding the § 362(h) cause of action. In early 1998, following the receipt and review of the aforementioned pleadings, the Court deemed the § 362(h) cause of action fully submitted.[2]

## FACTS

### Prepetition Events

1. On July 27, 1991, Julene Sucre entered into an automobile lease with MIC Leasing. Soon after that date, she failed to meet her lease obligations, causing MIC Leasing to repossess her automobile and commence an action against her in state court for default of the lease.

2. On September 6, 1991, the parties entered into a stipulation of settlement in New York State Supreme Court that required Ms. Sucre to satisfy the obligations set forth in the aforementioned lease. However, Ms. Sucre failed to meet her obligations under the stipulation of settlement.

3. On January 26, 1993, MIC Leasing obtained a judgment against Ms. Sucre in New York State Supreme Court, Nassau County, for $18,092.60 (the "Judgment"). The Judgment was subsequently docketed in Bronx County.

4. On February 22, 1993, a Wage Execution was forwarded to the Sheriff of the City of New York (the "Sheriff") for the purpose of garnishing Ms. Sucre's salary in satisfaction of the Judgment. From March 1994 through February 1996, the Sheriff collected ten (10) percent of Ms. Sucre's salary from her employer and forwarded those amounts to MIC Leasing.

5. On October 17, 1995, Ms. Sucre filed a petition under chapter 13 of the Bankruptcy Code, listing MIC Leasing as a creditor in the schedules she filed with her petition.

### Debtor's Projected and Actual Income and Expenses

6. In her petition, Ms. Sucre projected her total available monthly income to be $6,869.28. This figure includes $3,379.28 in total net monthly salary ($5,514.97 in gross monthly salary, less various payroll deductions), $2,840.00 in income from real property, and $650.00 in income from her husband.

7. Ms. Sucre projected her total monthly expenses to be $5,945.00, including $2,691.00 in living expenses and monthly mortgage payments of $3,254.00. The mortgage amount represents monthly payments made on two mortgages. Ms. Sucre paid $754.00 per month on a mortgage covering an income producing house in Florida and $2,500.00 per month on a mortgage covering her residence. The latter payment was made to The Prudential Home Mortgage Company, Inc. (the "Prudential Mortgage").

8. Ms. Sucre claims to have incurred postpetition late charges totaling $1,053.47 as a result of her failure to remain current on the Prudential Mortgage. Further, she claims that her failure to remain current was

---

**1.** Prior to her request for summary judgment, Ms. Sucre had received a refund of the amounts garnished from her postpetition wages.

**2.** This Memorandum Decision constitutes findings of fact and conclusions of law under Fed. R.Civ.P. 52 as made applicable by Fed. R.Bankr.P. 7052.

caused by MIC Leasing's postpetition garnishment.

9. In her first proposed plan of reorganization, filed concurrently with her petition, Ms. Sucre agreed to make monthly plan payments of $600.00 for the first twelve (12) months of the plan.

10. Based on a review of her pay stubs, Ms Sucre's actual average gross monthly salary during the period of the postpetition garnishments was $7,569.87, resulting in an average monthly garnishment of $756.99.

11. Ms. Sucre's actual average net income during the aforementioned period, after deducting the garnishment amount set forth above, was $7,328.53. This amount consisted of $3,838.53 of average net salary [3], $650.00 in monthly income from her husband, $2,840.00 in monthly income from real property.

### Notice to Creditors/Continuing Garnishment

12. Ms. Sucre alleges that MIC Leasing received notice of her bankruptcy filing soon after the petition date. MIC Leasing does not dispute this contention, nor does it dispute that its attorney participated in a telephone conversation with Ms. Sucre's attorney shortly after the filing of the case and that he was informed during that conversation of the existence of the automatic stay and the requirement that all garnishment efforts be discontinued.

13. The Sheriff's office, which collected the garnished amounts from Ms. Sucre's employer pursuant to the Wage Execution and forwarded them to MIC Leasing, was not listed as a creditor in Ms. Sucre's schedules.

14. The evidence presented indicates that the Sheriff first received notice that Ms. Sucre had filed for bankruptcy protection in February 1996, approximately four (4) months after the petition date.

15. Based on a review of her pay stubs, Ms. Sucre's wages were garnished during each postpetition pay period beginning with the first postpetition pay period ending on October 28, 1995 through the pay period ending on February 17, 1996. The total amount garnished during that period was $2,980.75.[4]

16. The Sheriff collected the garnished amounts from Ms. Sucre's employer, typically over a two-month period, and issued a check to MIC Leasing for the amount collected, less poundage. There was a gap of approximately one month between the end of the collection period and the date a check was issued by the Sheriff to MIC Leasing.

17. On or about November 22, 1995, MIC Leasing received a garnishment check from the Sheriff, dated November 3, 1995, for $1,164.35.

18. On or about January 26, 1996, MIC Leasing received another garnishment check from the Sheriff, dated January 5, 1996, for $1,166.11.

19. Prompted by the continued garnishment of her wages, Ms. Sucre sent a letter, dated January 10, 1996, to MIC Leasing requesting that it discontinue the garnishment of her postpetition wages and return all the monies it had received after October 17, 1995 pursuant to the Wage Execution.

20. For the first time, in a letter dated February 2, 1996, MIC Leasing notified the Sheriff's office of Ms. Sucre's chapter 13 bankruptcy filing and of her request for a refund. In that letter, MIC Leasing also requested information regarding the amounts garnished from Ms. Sucre's wages and the dates those amounts were collected.

21. On March 1, 1996, Ms. Sucre's attorney contacted MIC Leasing's counsel by telephone and asked that the garnishment of her client's postpetition wages be discontinued. In response, MIC Leasing's attorney took the position that Ms. Sucre shared responsibility for discontinuing the Sheriff's garnishment efforts, and suggested that Ms. Sucre

---

**3.** This amount includes $267.75, representing the average amount deducted each month from Ms. Sucre's paycheck and contributed to her Municipal Credit Union savings account.

**4.** In calculating this aggregate amount, the Court reduced the amount garnished from the pay period ending October 28, 1995 by one-tenth, or $27.21, to reflect the one prepetition work day, October 16, 1995, included in that pay period.

request a discontinuance and a refund directly from the Sheriff.

22. Following that telephone conversation, Ms. Sucre's attorney contacted the Sheriff's office and was informed that the office would only discuss matters related to the Wage Execution with the judgment creditor, in this case MIC Leasing.

23. In a letter dated March 28, 1996, MIC Leasing's attorney declared that neither he nor his client would take any further action to obtain information from the Sheriff regarding the garnishment of Ms. Sucre's wages. However, in the same letter he acknowledged that Ms. Sucre might be entitled to a refund, and that MIC Leasing would be willing to give her one. MIC Leasing's counsel also stated that none of the monies it had received from the Sheriff through the Wage Execution would be returned until a breakdown of the dates and amounts of the garnishments was provided to it by the Sheriff's office.

24. In March 1996, MIC Leasing received a garnishment check from the Sheriff for $1,217.49.

25. In a letter dated March 22, 1996, MIC Leasing returned the March garnishment check to the Sheriff and informed the Sheriff's office that it could not accept any future garnishment payments because Ms. Sucre had filed bankruptcy.

26. The last pay period during which Ms. Sucre's wages were garnished ended on February 17, 1996.

### Commencement of Adversary Proceeding/Refund to Debtor

27. On May 2, 1996, Ms. Sucre filed this adversary proceeding.[5]

28. In letters to the Sheriff and the New York City Law Department, dated June 21, 1996 and August 9, 1996, MIC Leasing's attorney requested a breakdown of the amounts and dates of the garnishments of Ms. Sucre's postpetition wages.

29. In a letter dated September 9, 1996, the New York City Law Department provid-ed a breakdown of the dates and amounts of garnishment payments made to MIC Leasing in November 1995 and January 1996, as well as when those amounts were collected by the Sheriff.

30. MIC Leasing refunded $2,277.00 to Ms. Sucre soon after receiving the September 9, 1996 letter from the New York City Law Department.

31. On October 22, 1996, MIC Leasing made a second refund payment to Ms. Sucre in the amount of $911.82, representing additional amounts garnished from her postpetition wages that had not been included in the September refund payment.

### DISCUSSION

To prevail on a motion for summary judgment, the moving party must satisfy the criteria set forth in Fed.R.Civ.P. 56 as made applicable by Fed.R.Bankr.P. 7056. Fed. R.Civ.P. 56(c) provides in pertinent part:

> [t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The moving party has the burden of demonstrating the absence of any genuine issue of material fact, and all inferences to be drawn from the underlying facts must be viewed by the Court in the light most favorable to the party opposing the motion. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). However, where the movant has supported its motion for summary judgment, the adverse party must come forward with "significant probative supporting evidence" that a genuine issue of material fact exists. *Id.;* Fed.R.Civ.P. 56(e).

*A. Bankruptcy Code § 547*

■ The Court finds, as a matter of law, that the funds collected by the Sheriff and paid to MIC Leasing pursuant to its Wage Execution during the ninety (90) days prior

---

5. Neither Ms. Sucre nor MIC Leasing sought to name the Sheriff as a party to this action.

to the petition date are not avoidable under § 547(b) of the Bankruptcy Code because Ms. Sucre had no interest in those funds when the transfers were made. For a transfer to be avoidable under § 547(b) of the Bankruptcy Code, the debtor must have an interest in the property transferred. *See* 11 U.S.C. § 547(b) ("the trustee may avoid any transfer of an *interest of the debtor in property ....*") (emphasis added). The Second Circuit made clear in *In re Riddervold* that, under New York State law, once a wage execution is served on the judgment debtor's employer, the debtor no longer has an interest in the amount garnished from her salary. *In re Riddervold*, 647 F.2d 342, 344–346 (2d Cir.1981) ("[s]ervice of the income execution on the employer in effect works a novation whereby the employer owes 10% of the employee's salary not to the employee but to the sheriff for the benefit of the judgment creditor.") In that case, the Circuit determined that transfers made pursuant to a wage execution, served before the beginning of the preference period, were not avoidable under § 547(b). *Id.*

In this case, the Wage Execution was issued to the Sheriff on February 22, 1993, and the garnishment of Ms. Sucre's wages began in March 1994.[6] Although the Court was not provided with the date of service of the Wage Execution, there is no dispute that it was served upon Ms. Sucre's employer prior to March 1994. Therefore, because Ms. Sucre filed for bankruptcy more than a year after the Wage Execution was served, the transfers made pursuant to that Wage Execution during the ninety (90) day preference period did not violate § 547(b) of the Bankruptcy Code. Accordingly, MIC Leasing's motion for summary judgment on the § 547 cause of action is granted.

### B. *Section 362(h) of the Bankruptcy Code*

■ MIC Leasing and Ms. Sucre have each moved for summary judgment with regard to the cause of action under § 362(h) of the Bankruptcy Code. When faced with competing summary judgment motions the Court "must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Schwabenbauer v. Bd. of Educ. of the City Sch. Dist. of the City of Olean*, 667 F.2d 305, 314 (2d Cir.1981). In this case, the facts germane to the cause of action alleging a violation of § 362(h) are not in dispute. Therefore, "the Court must determine whether one of the parties is entitled to judgment as a matter of law based on the undisputed facts." *In re Drexel Burnham Lambert Group, Inc.*, 138 B.R. 687, 694 (Bankr.S.D.N.Y.1992).

■ Section 362(h) of the Bankruptcy Code provides:

> An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

Ms. Sucre is an individual and, therefore, may recover damages pursuant to § 362(h). *See In re Chateaugay Corp.*, 920 F.2d 183, 186 (2d Cir.1990) (holding that "a bankruptcy court may impose sanctions pursuant to § 362(h) ... only for violating a stay as to debtors who are natural persons.") The Second Circuit enunciated the standard governing the payment of damages under § 362(h) in *In re Crysen/Montenay Energy Co.*, 902 F.2d 1098 (2d Cir.1990). There, the Court concluded that, where a person takes a "deliberate act ... in violation of a stay, which the violator knows to be in existence," an award of damages under § 362(h) is justified. *Id.* at 1105. Such an act need not be performed with specific intent to violate the stay. Rather, so long as the violator possessed "general intent in taking actions which have the effect of violating the automatic stay," the intent requirement of § 362(h) is satisfied. *In re Chateaugay Corp.*, 112 B.R. 526, 529 (S.D.N.Y.1990), *rev'd on other grounds*, 920 F.2d 183 (2d Cir.1990).

---

6. There was a one-year period between the issuance of the Wage Execution and the commencement of the garnishment.

■ In this case, the Court finds that by failing to discontinue its garnishment action against Ms. Sucre upon receiving actual notice of the filing of her chapter 13 petition MIC Leasing willfully violated § 362(a) of the Bankruptcy Code. In so finding, the Court adopts that line of cases which hold that, upon receiving actual notice of the commencement of a bankruptcy case, a creditor has an affirmative duty under § 362 to take the necessary steps to discontinue its collection activities against the debtor. *See In the Matter of Sams*, 106 B.R. 485, 490 (Bankr. S.D.Ohio 1989) ("The provisions of the automatic stay place the responsibility to discontinue any pending collection proceedings squarely on the shoulders of the creditor who initiated the action."); *In re Dungey*, 99 B.R. 814, 816–17 (Bankr.S.D.Ohio 1989) ("a creditor has an affirmative obligation to halt all collection activity"); *In re Mitchell*, 66 B.R. 73 (Bankr.S.D.Ohio 1986); *In re Elder*, 12 B.R. 491, 494 (Bankr.M.D.Ga.1981) (the creditor is "in the driver's seat" with regard to the garnishment, and "cannot choose to do nothing and pass the buck to the garnishee or the court in which the garnishment is filed to effectuate the stay.") The reasoning of these cases is based on a plain reading of § 362(a), as well as the policy goals underlying the enactment of that section. *See In the Matter of Sams*, 106 B.R. at 490 ("Based on the language of 362(a) many courts have emphasized the obligation incumbent upon creditors to take necessary steps to halt or reverse pending state court actions or other collection efforts commenced prior to the filing of a bankruptcy petition, including garnishment of wages . . . .") (internal quotation marks omitted) (citations omitted); *In re Dungey*, 99 B.R. at 815 (quoting H.R.Rep. No. 595, 95th Cong. 1st Sess. 340–42 (1977); S.Rep. No. 989, 95th Cong.2d Sess. 54–55 (1978); reprinted in 1978 U.S.Cong. & Admin.News 5787 at 5840 and 6296–97) (finding that the automatic stay was intended to give "the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him to bankruptcy."); *In re Miller*, 22 B.R. 479, 481 (D.Md.1982) ("To place the onus on the debtor . . . to take affirmative steps to recover property seized in violation of the stay would subject the debtor to financial pressures the automatic stay was designed to temporarily abate, and render the contemplated breathing spell from his creditors illusory.")

There is no dispute that MIC Leasing received actual notice of Ms. Sucre's bankruptcy case shortly after the filing of the petition. At a March 27, 1997 hearing before this Court, MIC Leasing's counsel indicated that it was his belief that MIC Leasing received notice of Ms. Sucre's bankruptcy soon after the petition was filed. In addition, MIC Leasing does not dispute that its attorney was informed by Ms. Sucre's attorney soon after the petition was filed of the existence of the automatic stay and of the requirement that MIC Leasing discontinue its garnishment action. Yet, despite receiving prompt notice of the commencement of her case, MIC Leasing failed to notify the Sheriff of the existence of Ms. Sucre's bankruptcy case until February 2, 1996, more than four (4) months after the petition date and notice thereof, and only after receiving Ms. Sucre's January 10, 1996 letter requesting, once again, that the garnishment be discontinued.

In its defense, MIC Leasing claims that it lacked the authority to stop the Sheriff from continuing to garnish Ms. Sucre's postpetition wages because the Sheriff acted merely as MIC Leasing's "nominal agent." Even if the Court were to find support for that position under the applicable law, that argument does not excuse MIC Leasing's delay in notifying the Sheriff of the commencement of Ms. Sucre's bankruptcy case. Moreover, it is apparent from the Sheriff's prompt termination of the garnishment following receipt of MIC Leasing's February 2, 1996, letter informing the Sheriff of Ms. Sucre's bankruptcy case, that MIC Leasing's had sufficient authority over the Sheriff to cause the discontinuation of its garnishment action. In addition, MIC Leasing could have brought an action pursuant to § 5238 of the New York Civil Practice Law and Rules ("CPLR"), which provides that "[u]pon motion of any party . . . the court may direct the sheriff to

dispose of, account for, assign, return or release all of any part of any property or debt, or proceeds thereof...." The Practice Commentaries to that section provide that "[t]he [state] court has broad supervisory powers over the sheriff ... [and][i]n an exercise of this supervisory power the court can compel the sheriff to do whatever the sheriff should be doing according to law." N.Y. Unconsol. Law § 5238 (McKinney 1978) (Practice Commentaries).

Alternatively, the Second Circuit noted in *In re Crysen/Montenay Energy Co.* that the "standard [for awarding damages pursuant to § 362(h) ] encourages would-be violators to *obtain declaratory judgments* before seeking to vindicate their interests in violation of the automatic stay...." 902 F.2d at 1105 (dicta) (emphasis added). Thus, MIC Leasing could have sought the assistance of this Court in determining its responsibility with regard to the actions of the Sheriff. However, by failing to do so, and by failing to take any other action to prevent the postpetition garnishment of Ms. Sucre's wages, MIC Leasing is liable for actual damages under § 362(h).

 MIC Leasing also violated § 362(a) by failing to promptly return to Ms. Sucre the amounts garnished from her postpetition wages after receiving actual notice of her bankruptcy case. Upon learning of a bankruptcy filing, a creditor has an affirmative duty to return the debtor to the status quo position as of the time of the filing of the petition. *See In re Dungey,* 99 B.R. at 816–17 (finding that the creditor had an affirmative obligation to return wages garnished postpetition in violation of the automatic stay); *In re Stephen W. Grosse, P.C.,* 68 B.R. 847, 850 (Bankr.E.D.Pa.1987) ("[the] creditor should undo its postpetition collection activities without the debtor having to seek affirmative relief from the bankruptcy court"); *Matter of Endres,* 12 B.R. 404, 406 (Bankr. E.D.Wis.1981) ("refusal to return the property upon learning of the [bankruptcy] proceeding is a willful violation of the stay provisions and may be contemptible"). Despite having notice of Ms. Sucre's bankruptcy filing, MIC Leasing withheld the amounts garnished from her postpetition wages until a

final refund payment was made on October 22, 1996, approximately one (1) year after she filed her petition. Although MIC Leasing did return one of the garnishment payments to the Sheriff upon receipt, it took no action to ensure that the Sheriff forwarded that payment to Ms. Sucre.

MIC Leasing argues, however, that it did not violate the automatic stay because it diligently attempted to obtain a breakdown of the dates and amounts of the garnishments collected by the Sheriff's office. Prior to commencement of this adversary proceeding, MIC Leasing's attempt consisted of the February 2, 1996 letter to the Sheriff referred to previously. Although that letter may have caused the Sheriff to discontinue its garnishment efforts, it did not result in the Sheriff producing any garnishment information to MIC Leasing. Despite the continued lack of response from the Sheriff, MIC Leasing made no further effort to obtain the allegedly necessary garnishment information until after the commencement of this adversary proceeding. Moreover, in the ensuing months, MIC Leasing took the position that it was Ms. Sucre's responsibility to prevent further postpetition garnishments and obtain a breakdown of the garnishment payments from the Sheriff. In a letter, dated March 28, 1996, to Ms. Sucre's attorney, MIC Leasing's attorney stated:

> I will be damned if I will do any more work on behalf of Mrs. Sucre to obtain the required information. You want dollars? Fine. Then you secure the needed information from the Sheriff's Office.
>
> Pending your securing and transmitting this data to our office, please do not disturb us with written and/or oral communications.

The position taken by MIC Leasing in this letter is patently inconsistent with its obligations under § 362 and is indicative of MIC Leasing's lack of effort to restore Ms. Sucre to her status quo position.

Furthermore, even without the garnishment information requested from the Sheriff, MIC Leasing could have met its obligation to return Ms. Sucre to her status quo position by returning the improperly garnished wages based on a review of her pay stubs. By

reviewing Ms. Sucre's postpetition pay stubs, which indicate the amount garnished during each pay period, MIC Leasing could have determined the amount of postpetition garnishments that should have been refunded. Even if a precise calculation could not be ascertained, MIC Leasing certainly could have returned a substantial portion of those funds prior to its receipt of the information requested from the Sheriff's office. However, MIC Leasing apparently never requested to review Ms. Sucre's pay stubs. Instead, it refused to refund any of the monies garnished from her postpetition wages until the Sheriff provided a breakdown of the garnishments.

Accordingly, there exists no genuine issue of material fact as to whether, by failing to take the necessary steps to discontinue its garnishment action and by not making a diligent effort to return Ms. Sucre to her status quo position as of the petition date, MIC Leasing willfully violated § 362(a). Therefore, Ms. Sucre's motion for summary judgment on her cause of action seeking actual damages pursuant to § 362(h) cause of action is granted. MIC Leasing's motion seeking summary judgment in its favor on the same cause of action is denied.

### C. *Determination of Actual Damages*

 Having found that MIC Leasing willfully violated the automatic stay, the Court will award Ms. Sucre, a natural person, actual damages under § 362(h). *See In re Chateaugay Corp.*, 920 F.2d at 186. Ms. Sucre, as the party seeking damages pursuant to § 362(h), has the burden of proving what damages were incurred and what relief is appropriate. *See In re Dunn*, 202 B.R. 530, 531 (Bankr.D.N.H.1996) ("The movants ... have the burden of proof with regard to showing ... that the willful violation caused the movants to suffer harm and incur damages, and then to show what relief is appropriate.") An award of damages under Bankruptcy Code § 362(h) must have a sufficient factual foundation. *See Archer v. Macomb County Bank*, 853 F.2d 497 (6th Cir.1988). Ms. Sucre has requested an award of $1,053.47 in late fees on her mortgage payments, lost interest on the $3,188.82 in post-

petition wages garnished, and $5,820.00 in attorneys' fees and costs.

### 1. *Interest*

 Ms. Sucre is entitled to an award of prejudgment interest on the $2,980.75 improperly garnished from her postpetition wages as actual damages under Bankruptcy Code § 362(h). *See, e.g., In re Orient River Investments, Inc.*, 105 B.R. 790, 797 (Bankr. E.D.Pa.1989) (awarding prejudgment interest on the sum withheld by the bank in willful violation of the automatic stay as part of actual damages). An award of actual damages under § 362(h) is intended to compensate a debtor for damages sustained as a result of a willful violation of the automatic stay. *See In re Cox*, 214 B.R. 635, 642 (Bankr.N.D.Ala.1997) ("The term 'actual damages' is synonymous with the term 'compensatory damages.' ") In this case, the garnishment of Ms. Sucre's postpetition wages denied her the ability to use or earn interest on those wages. Therefore, she is entitled to prejudgment interest to compensate her for the lost time value of the improperly garnished wages. *See, e.g., West Virginia v. United States*, 479 U.S. 305, 310 n. 2, 107 S.Ct. 702, 93 L.Ed.2d 639 (1987) ("Prejudgement interest serves to compensate for the loss of use of money due as damages"); *In re Suburban Motor Freight, Inc.*, 124 B.R. 984, 1006 (Bankr.S.D.Ohio 1990) (awarding prejudgment interest to compensate for the lost time value of the money unlawfully deprived).

In this case, Ms. Sucre was ultimately deprived of the use of $2,980.75. Therefore, to reflect the lost "time value" of the amount improperly garnished, the Court will calculate interest from the date each garnished paycheck was issued to the date the amount garnished from that paycheck was refunded to Ms. Sucre. For paychecks issued on November 3 and November 17, 1995, interest was computed through October 22, 1996, the date MIC Leasing refunded $911.82 to Ms. Sucre. For paychecks issued on December 1, 15, and 29, 1995, January 12 and 26, 1996, and February 9 and 23, 1996, interest was computed through September 11, 1996, the approximate date when MIC Leasing refunded $2,277.00 to Ms. Sucre.

**350**

Generally, courts have used the federal postjudgment rate of interest as set out in 28 U.S.C. § 1961 in computing prejudgment interest. *See Brantley v. Weeks*, 116 B.R. 443, 448 (Bankr.D.Md.1990) ("Most federal courts which have addressed the issue of the applicable prejudgement interest rate in a case involving federal question have used the applicable federal postjudgement interest rate pursuant to 28 U.S.C. § 1961.") Section 1961 provides that post-judgment interest is to be granted "at a rate equal to the coupon issue yield equivalent (as determined by the Secretary of the Treasury) of the average accepted auction price for the last auction of fifty-two week United States Treasury Bills...." 28 U.S.C. § 1961. In this case, the Court will apply the rate of interest fixed immediately prior to the issuance of each garnished paycheck.[7] Accordingly, based on the calculations described above, Ms. Sucre is entitled to recover $113.52 in prejudgment interest.

### 2. *Late Charges*

■■■■■■ Ms. Sucre is not entitled to recover actual damages to compensate her for postpetition late mortgage charges incurred on the Prudential Mortgage because she failed to prove that MIC Leasing's willful violations of the automatic stay were the proximate cause of those charges. To render MIC Leasing liable for consequential damages as part of an award of actual damages pursuant to § 362(h), Ms. Sucre must prove that MIC Leasing's conduct proximately caused the damages claimed and that those damages were a reasonably foreseeable result of MIC Leasing's actions. *See Orient River Investments, Inc.*, 105 B.R. at 796. In this case, Ms. Sucre contends that because her wages continued to be garnished postpetition she did not have sufficient funds to make her monthly mortgage payments. Her claim is based on her chapter 13 petition in which she projected her total monthly income would be $6,869.28 (consisting of $3,379.28 in net monthly salary, $2,840.00 in income from real property, and $650.00 in income from her husband), and her total monthly expenses would be $5,945.00, including $2,691.00 in living expenses and $3,254.00 in monthly mortgage payments. Based on those figures, and the additional monthly expenditure of $600.00 which Ms. Sucre began paying in November 1995 pursuant to her plan of reorganization, the continued monthly garnishment of ten (10) percent ($551.50 based upon the estimated monthly salary of $5,514.97) would have depleted Ms. Sucre's available income to a level that she would not have been able to meet all of her monthly expenses.[8]

However, Ms. Sucre's actual average monthly net salary during the period of the postpetition garnishments was $3,838.53 which, when added to her other monthly income, provided her with an average net monthly income of $7,328.53. This amount was sufficient to meet all of her monthly obligations of $5,945.00,[9] as well as the $600.00 monthly plan payments, despite the continued monthly garnishment of $756.99 from her salary.[10] Therefore, because Ms.

---

**7.** Rates of interest set out in 28 U.S.C. § 1961:

| Date of Auction | Equivalent Coupon Issue Yield |
| --- | --- |
| 10/12/95 | 5.62% |
| 11/15/95 | 5.45% |
| 12/7/95 | 5.35% |
| 1/4/96 | 5.16% |
| 2/1/96 | 4.89% |
| 2/29/96 | 5.25% |
| 4/2/96 | 5.46% |
| 4/25/96 | 5.60% |
| 5/23/96 | 5.62% |
| 6/20/96 | 5.89% |
| 7/18/96 | 5.81% |
| 8/15/96 | 5.67% |
| 9/12/96 | 5.90% |
| 10/10/96 | 5.64% |

**8.** Calculation based on Ms. Sucre's petition:

| | |
| --- | --- |
| $6,869.28 | Net Monthly Income (net salary, income from real estate, and contribution from husband) |
| (551.50) | Monthly Garnishment (10% of gross monthly salary of $5,514.97) |
| (5,945.00) | Net Monthly Expenses (including payment of mortgages) |
| (600.00) | Monthly Plan Payment |
| ($227.22) | Monthly Deficit |

**9.** No evidence was presented showing a decrease in the amount Ms. Sucre received from other income sources or an increase in the amount of her monthly expenses. Therefore, the Court concludes that those amounts remained constant throughout the postpetition garnishment period.

**10.** Court's calculation based on pay stub figures and Ms. Sucre's plan:

Sucre had sufficient funds remaining to pay her mortgage in a timely manner, the garnishment of her postpetition wages was not the proximate cause of the late mortgage charges. Having found that the late mortgage charges were not proximately caused by the postpetition garnishment of Ms. Sucre's wages, the Court need not address the issue of the foreseeability of those charges. Accordingly, Ms. Sucre is not entitled to recover late mortgage charges as actual damages pursuant to § 362(h).

### 3. *Amount Returned in Error*

Ms. Sucre sought by her Complaint an Order "[d]irecting Defendant MIC Leasing to return ... all the monies unlawfully collected by them." Therefore, this Court has jurisdiction to determine not only what amounts were garnished in violation of the stay, but also whether any amount was refunded to Ms. Sucre in error. MIC Leasing refunded $3,188.82 to Ms. Sucre in September and October of 1996. However, based on a review of copies of Ms. Sucre's pay stubs, postpetition garnishments totaled $2,980.75. Therefore, the Court reduces the amount awarded to Ms. Sucre by the amount of the overpayment, $208.07. In doing so, the Court also reduces the principal amount of MIC Leasing's claim against Ms. Sucre by $208.07.

### 4. *Attorneys' Fees and Costs*

Section 362(h) provides for the inclusion of attorneys' fees and costs as part of an award of actual damages. Although the language of § 362(h) does not limit the amount of attorneys' fees and costs to be awarded under that section, courts have determined that such an award must be "reasonable and necessary," and that courts should "closely scrutinize the fees requested by attorneys for unnecessary and excessive charges." *Price v. Pediatric Academic Assn.*, 175 B.R. 219, 221 (S.D.Ohio 1994); *See also In re Meis–Nachtrab*, 190 B.R. 302, 308 (Bankr.N.D.Ohio 1995); *Putnam v. Rymes Heating Oils, Inc.*,

167 B.R. 737, 741 (Bankr.D.N.H.1994). Upon review of Ms. Sucre's attorney's application for costs, the Court finds that her request for an award in the aggregate amount of $95.00 is fair and reasonable.

In determining the reasonableness of attorneys' fees under § 362(h), the Court will utilize the "lodestar" method ordinarily used in determining the reasonableness of fees sought pursuant to § 330 of the Bankruptcy Code. *See In re Price*, 143 B.R. 190, 192–93 (Bankr.N.D.Ill.1992) (finding that because § 362(h) is "silent on the standards and methodology" to be used in assessing fees and costs, the Court will look to other Code sections for guidance). To determine the "lodestar fee" the Court must make an initial objective determination as to the number of hours reasonably expended and the reasonable hourly rate. *See Lindy Bros. Builders, Inc. of Phila. et al. v. American Radiator & Standard Sanitary Corp. et al.*, 487 F.2d 161, 167 (3rd Cir.1973). After multiplying the two, the Court may adjust the product by consideration of several subjective factors. *Id.* Courts consider the following factors when using the "lodestar" method:

(1) time and labor required;

(2) novelty and difficulty of the questions raised;

(3) the skill required to properly perform the legal services rendered;

(4) the preclusion of other employment by the attorney due to the acceptance of the case;

(5) the customary fee charges for like work;

(6) whether the fee sought is fixed or contingent;

(7) the time limitations imposed by the client or the circumstances;

(8) the amount in controversy and the results obtained;

| | |
|---|---|
| $7,328.53 | Net Monthly Income (net salary, income from real estate, and contribution from husband) |
| (756.99) | Monthly Garnishment (10% of gross monthly salary of 7,569.87) |
| (5,945.00) | Net Monthly Expenses (including payment of mortgages) |
| (600.00) | Monthly Plan Payment |
| $26.54 | Monthly Excess Income |

(9) the experience, reputation, and ability of the attorney;

(10) the 'undesirability' of the case;

(11) the nature and length of the professional relationship between the attorney and the client; and

(12) attorney fee awards in similar cases.

*See In re Price,* 143 B.R. at 192–93 (quoting *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974)).

■ In determining the amount of hours reasonably expended, the Court must exclude hours that are "excessive, redundant or otherwise unnecessary...." *Hensley v. Eckerhart,* 461 U.S. 424, 434, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). The Court has reviewed the Amended Affirmation in Support of Fees (the "Affirmation") submitted by Ms. Sucre's attorney and finds that the services reasonably required to effectively represent Ms. Sucre were: (1) all time spent in actively seeking to prevent the continued postpetition garnishment of Ms. Sucre's wages; (2) preparation of the Summons and Complaint; (2) review of the MIC Leasing's Answer; and (3) preparation of the Debtor's Response to the Motion for Summary Judgment, including her Motion for Summary Judgment. The amount of time attributed to the aforementioned services in the Affirmation is 10.2 hours.

■ "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman v. Housing Auth. City of Montgomery,* 836 F.2d 1292, 1299 (11th Cir.1988) (*citing Blum v. Stenson,* 465 U.S. 886, 895–96 n. 11, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984)). Ms. Sucre, as the applicant in this case, "bears the burden of producing satisfactory evidence that the requested rate is in line with prevailing market rates." *Id.* The Court determines the appropriate rate to be applied by altering "the prevailing market rate based on an assessment of the skill demonstrated in the case at bar." *Id.* at 1300. Ms. Sucre's attorney seeks to be compensated at her customary hourly rate of $250.00. However, neither Ms. Sucre, nor her attorney, provide any evidence of the prevailing market rate for solo practitioners with similar experience, engaging in similar representation. Yet, even assuming that the rate proposed by Ms. Sucre's attorney is representative of the market, her performance in this case justifies reducing her hourly rate to $200.00. In particular, the factual presentation made by Ms. Sucre's attorney provided little guidance or assistance to the Court. As a result, the Court was required to spend innumerable hours assembling the relevant facts from the documents presented. Therefore, the Court considers the reasonable hourly rate in this case to be $200.00.

Using the variables set forth above, the "lodestar fee" is $2,040.00. Applying the subjective "lodestar" factors to the "lodestar fee," including the total amount improperly garnished from Ms. Sucre's postpetition wages, the Court does not find cause to reduce or enhance the requested amount. Accordingly, the Court finds that an award of attorneys' fees in the amount of $2,040.00 is fair and reasonable.

Therefore, based on the foregoing, it is hereby

ORDERED, that MIC Leasing's motion for summary judgment is GRANTED as to Ms. Sucre's cause of action asserted pursuant to § 547 of the Bankruptcy Code; and it is further

ORDERED, that MIC Leasing's motion for summary judgment is DENIED as to Ms. Sucre's cause of action asserted pursuant to § 362(h) of the Bankruptcy Code; and it is further

ORDERED, that Ms. Sucre's motion for summary judgment is GRANTED, in amounts set forth below, as to her cause of action asserted pursuant to § 362(h) of the Bankruptcy Code; and it is further

ORDERED, that MIC Leasing shall remit payment to Ms. Sucre the aggregate amount of $2,040.45 on or before October 13, 1998 for actual damages incurred (consisting of $113.52 in interest, $2,040.00 in reasonable attorneys' fees and $95.00 in costs, less $208.07 for the amount erroneously refunded by MIC Leasing to Ms. Sucre); and it is further

ORDERED, that MIC Leasing's claim against Ms. Sucre is reduced by $208.07 to reflect the aforementioned credit for the amount erroneously refunded.