James Jay BALL, Appellant,

v.

A.O. SMITH CORPORATION, Appellee.

No. 1:04–CV–532(LEK).

United States District Court,
N.D. New York.

Feb. 3, 2005.

James Jay Ball, Meridale, NY, pro se.

Frederick W. Morris, Jeffrey A. Eyres, Leonard, Street Law Firm, Minneapolis, MN, for Appellee.

### MEMORANDUM–DECISION AND ORDER [1]

KAHN, District Judge.

## I. BACKGROUND

Presently before the Court is an appeal by Debtor James J. Ball ("Debtor"). Debtor, a licensed attorney, appeals from several rulings of the Bankruptcy Court for the Northern District of New York in an action brought by Plaintiff A.O. Smith Corporation ("AOS"). Specifically, he asks this Court to reverse the rulings of the bankruptcy court and now order that (1) Debtor is discharged from paying an award of attorney's fees that was granted by the U.S. District Court in Louisiana because the district court did not conclude that Debtor acted willfully or maliciously as is required under 11 U.S.C. § 523(a)(6); (2) the admission of unauthenticated copies of the transcripts from proceedings in the District Court of Louisiana violated the Federal Rules of Evidence, and therefore they should have been excluded from evidence at the bankruptcy trial; (3) AOS should be held in contempt of court because it violated the automatic stay by filing (a) in the Eastern District of New York, a motion for costs stemming from a scheduled deposition of Debtor and (b) in

---

1. For printed publication in the Federal Re- porter.

North Carolina state court, a motion to have Debtor's *pro hoc vice* status revoked in that jurisdiction [2]; (4) it was mandatory for AOS's counsel to withdraw from representation of AOS, pursuant to Disciplinary Rule 2–110(b)(2), because they violated Disciplinary Rule 5–102 by appearing as both a witness and legal advocate for their client; and (5) pursuant to Local Bankruptcy Rule 9022.1, the orders of the bankruptcy court are vacated because they were never served on Debtor.

## II. DISCUSSION

### (a) Standard of Review

■ In reviewing the rulings of a bankruptcy court, a district court applies the clearly erroneous standard to a bankruptcy court's conclusions of fact, and *de novo* review to conclusions of law. *Yarinsky v. Saratoga Springs Plastic Surgery,* 310 B.R. 493, 498 (N.D.N.Y.2004) (Hurd, J.) (citing to *In re Manville Forest Prods. Corp.,* 209 F.3d 125, 128 (2d Cir.2000); *In re Petition of Bd. of Dirs. of Hopewell Int'l Ins. Ltd.,* 275 B.R. 699, 703 (S.D.N.Y. 2002); Fed. R. Bankr.P. 8013). Mixed questions of law and fact are reviewed *de novo. Ernst & Young v. Bankr.Servs. (In re CBI Holding Co.),* 311 B.R. 350 (S.D.N.Y.2004) (citing to *In re Vebeliunas,* 332 F.3d 85, 90 (2d Cir.2003); *In re Aro-Chem Corp.,* 176 F.3d 610, 620 (2d Cir. 1999)). Under Rule 8013 of the Federal Bankruptcy Rules, on appeal, "the district court ... may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings."

### (b) Dischargeability of Attorneys Fees Awarded

#### (i) Background

The award of attorney's fees that Debtor now seeks to have discharged was ordered by Judge Tucker L. Melancon in *Gatreau v. AOS,* No. 98–CV–1187 (W.D.La.2001). In that proceeding, Debtor, a licensed attorney, represented a plaintiff who alleged fraud surrounding his purchase of a used silo manufactured by AOS. With respect to the merits of the action, the district court granted AOS's motion for summary judgment and dismissed plaintiff's action with prejudice because it was time barred. W.D. La. Tr. (Dkt. No. 1, Appellant Ex. 6) [3] at 4–5. AOS then moved for sanctions against Debtor pursuant to Rule 11, alleging that the frivolous lawsuit was initiated only to harass and cause unnecessary litigation expense. *Id.* at 6–7. AOS also sought sanctions pursuant to 28 U.S.C. § 1927 which were to be granted, in accordance with Fifth Circuit precedent, only if the factual and legal arguments are "unwarranted." *Id.* at 9–10.

After holding several days of hearings, Judge Melancon issued his oral decision on January 31, 2001 that Debtor was to be sanctioned because he filed the suit against AOS even though "[t]here was not a colorable claim when the lawsuit was filed." *Id.* at 10. Judge Melancon explained that "the prescription issue as to the state law claim ... and the statute of limitations issue as to the RICO claim were so obviously abar [sic] that under the circumstances it was unreasonable to bring the suit in the first place [for] a reasonably competent attorney, which [Debtor] should be ...." *Id.* at 11. The Fifth Circuit

---

**2.** Debtor asks that this Court reverse the bankruptcy court's decision in this regard and also remand for further proceedings.

**3.** This exhibit is the transcript from proceedings held in the Western District of Louisiana before Judge Melancon on January 31, 2001. This transcript is designated on appeal as Appellant's Exhibit 6.

affirmed the imposition of sanctions holding that "the district court gave sufficient reasons for the sanctions award, including the type and amount of sanctions." *Gautreau v. A.O.Smith Corp.,* 34 Fed.Appx. 962 (5th Cir.2002).[4]

Once Debtor filed for Chapter 7 bankruptcy, the parties disputed whether the debt arising from the imposition of sanctions should be discharged. The bankruptcy court held that it is non-dischargeable pursuant to § 523(a)(6) which states that "a discharge under [Chapter 7] . . . does not discharge an individual debtor from any debt . . . for willful and malicious injury by the debtor to another entity . . . ." 11 U.S.C. § 523(a)(6); *In re Ball,* No. 02–60810 (Bankr.N.D.N.Y. Feb. 10, 2004).[5] Debtor contends that the bankruptcy court erred when it invoked this exception and held that the sanctions would not be discharged. Debtor explains that the sanctions were imposed because Judge Melancon concluded only that Debtor's conduct was "unreasonable." Debtor claims that because Judge Melancon did not hold that Debtor's conduct was "willful and malicious," the debt is dischargeable and the exception to discharge for debt's incurred willfully or maliciously, as set forth in § 523(a)(6), is not applicable.

## (ii) Standard of Review

█ Whether the factual findings satisfy the statutory requirements of non-dischargeability pursuant to § 523(a)(6) is properly characterized as a mixed question of law and fact which the court reviews *de novo. See Golant v. Care Comm, Inc.,* 216 B.R. 248, 252 (N.D.Ill.1997).

## (iii) Willful Nature of Debtor's Actions

█ Based on the record before the Court, the bankruptcy court properly ruled that the award of attorney's fees was not to be discharged pursuant to the exception in § 523(a)(6). Collateral estoppel prevents Debtor from relitigating Judge Melancon's decision to impose sanctions. *See Grogan v. Garner,* 498 U.S. 279, 284 n. 11, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) (stating that "collateral estoppel principles do indeed apply in discharge exception proceedings pursuant to section 523(a)"). Under principles of collateral estoppel, therefore, this Court is bound by the district court's "factual finding . . . that the filing of the lawsuit initially was unwarranted and should never have been commenced, had a reasonable investigation been made by Mr. Ball . . . ." W.D. La. Tr. (Dkt. No. 1, Appellant Ex. 6) at 16.

Judge Melancon explained that Debtor's actions were "a clear violation under Rule 11." *Id.* at 13. Moreover, Debtor's actions in the course of representing plaintiff were so egregious that even though the Fifth Circuit "sparingly applie[s]" the imposition of sanctions under 28 U.S.C. § 1927, Judge Melancon thought such an award was appropriate because "the proceedings were unwarranted and should never have been commenced . . . ." *Id.* at 13. Although it did not rely on it, the district court also explained that it "has the authority under its inherent power to sanction [Debtor]." *Id.* at 14. Therefore, pursuant to Rule 11 and § 1927, the district court "shift[ed] . . . the entire financial burden of the action . . . from the defendant [AOS] to the plaintiff [Debtor]." *Id.* at 13.

---

4. This slip opinion is designated on appeal as Appellant's Exhibit 9. (Dkt. No. 1, Appellant Ex. 9).

5. This slip opinion is designated on appeal as Appellant's Exhibit 2. (Dkt. No. 1, Appellant Ex. 2).

The question before this Court is whether Debtor's actions in Louisiana district court were willful and malicious, such that the attorney's fees debt should not be discharged under the exception of § 523(a)(6). All attorneys must act reasonably when operating within the confines of our judicial system, and the statements of Judge Melancon certainly demonstrate that the Debtor did not. While Judge Melancon did not state on the record that Debtor's actions were "willful and malicious," that is inherent based on the imposition of sanctions under Rule 11 and § 1927. Under Fifth Circuit precedent, sanctions under § 1927 that are imposed for an "'unreasonable' and 'vexatious' multiplicative proceeding[,] necessitates 'evidence of bad faith, improper motive, or reckless disregard of the duty owed to the court.'" *Mercury Air Group, Inc. v. Mansour*, 237 F.3d 542, 549 (5th Cir.2001) (quoting *Edwards v. General Motors Corp.*, 153 F.3d 242, 246 (5th Cir.1998)); *see also, State St. Bank & Trust Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 180 (2d Cir. 2004) ("Section 1927 authorizes the imposition of sanctions only when there is a finding of conduct constituting or akin to bad faith.") (internal quotations and citations omitted); *Morelli v. Service Am. Dining Servs.*, 1998 WL 166878, at *2, 1998 U.S. Dist. LEXIS 5058, at *5 (N.D.N.Y. Apr. 3, 1998) (Scullin, J.) (" 'The term 'willful,' as expressed in 523(a)(6), is synonymous with intentional .... The statute requires not only intentional conduct on the part of the debtor, but also intentional or deliberate injury.' ") (internal quotations and citations omitted).

Debtor even admitted that his conduct was found by Judge Melancon to be "intentional conduct that was in bad faith." July 17, 2003 Bank. Tr. (Dkt. No. 1, Appellant Ex. 5)[6] at 34. Therefore, based upon the statements of Judge Melancon and the assessment of fees under § 1927, Debtor's conduct is properly characterized as "willful and malicious." Although the district court did not use the terminology found in § 523(a)(6), namely that his conduct be "willful and malicious," it is clear from the record that his actions rise to that level. The bankruptcy court correctly held that this debt fits within the exception of § 523(a)(6) and should therefore not be discharged.

**(c) Admission of an Unauthenticated Transcript**

In support of its claim that the award of attorney's fees was not dischargeable pursuant to § 523(a)(6), the only evidence offered by AOS in the bankruptcy court's adversary proceeding were duplicates of the transcripts from the Western District of Louisiana proceedings.[7] Debtor next contends that, even if, as discussed above, the debt should not be discharged based upon the application of § 523(a)(6) to the facts of the debt at issue, the bankruptcy court's holding should be overturned because relying on the transcripts violated the Federal Rules of Evidence. Therefore, as that transcript should have been excluded and it offered no other evidence in support of its claim, AOS did not meet its burden to show that the debt was not dischargeable pursuant to § 523(a)(6). *See Morelli,* 1998 WL 166878, at *2, 1998

**6.** This exhibit is the transcript from proceedings held in the Northern District of New York before Judge Gerling on July 17, 2003, which was a combined trial and evidentiary hearing on the dischargeability of the award of attorney's fees and AOS's alleged violations

of the automatic stay. This transcript is designated on appeal as Appellant's Exhibit 5.

**7.** The transcripts at issue were apparently for proceedings on September 3, 1999 and November 3, 1999. *See* July 17, 2003 Bankr.Tr. (Dkt. No. 1, Appellant Ex. 5) at 16.

U.S. Dist. LEXIS 5058, at *5 (noting that the party challenging the dischargeability of a debt carries the burden of proving the same).

In sum, Debtor's objection is that the transcripts that were admitted were not originals. Rather, the bankruptcy court admitted duplicates of the transcripts from the Louisiana proceedings because AOS did not bring the originals to the bankruptcy trial. *See* July 17, 2003 Bankr.Tr. (Dkt. No. 1, Appellant Ex. 5) at 8–19. The duplicates included the attached court reporters' signed certification. *Id.* at 16–17. At trial, Debtor contended that, as the transcripts were not originals, they must be authenticated by a witness or otherwise excluded. Nonetheless, the bankruptcy court admitted the transcripts because, as certified copies of public records, they are self-authenticating under Federal Rule of Evidence 901(4), and a duplicate of such a record is admissible to the same extent as an original under Federal Rule of Evidence 1003.

 This Court reviews the bankruptcy court's evidentiary ruling for an abuse of discretion. *See, e.g., Manley v. AmBase, Corp.,* 337 F.3d 237, 247 (2d Cir. 2003) (citations omitted). Even if a bankruptcy court did abuse its discretion in admitting evidence, the decision is reversible only if it also affects a party's substantial rights. *Daly v. Richardson,* 2004 WL 2211726, at *2, 2004 U.S. Dist. LEXIS 19635, at *7 (D.Conn. Sept. 28, 2004) (citing to *Schering Corp. v. Pfizer, Inc.,* 189 F.3d 218, 224 (2d Cir.1999)).

 In the present case, the bankruptcy judge did not abuse his discretion. He properly ruled that a court transcript is self-authenticating under Rule 902(4), which states that "[e]xtrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to ... [a] copy of an official record or report ..., or of a document authorized by law to be recorded or filed and actually recorded or filed in a public office, ... certified as correct by the custodian or other person authorized to make the certification ...." The trial transcripts, which contain the court reporters' certifications, are therefore admissible as prima facie evidence of what was said therein. *See United States v. Lumumba,* 794 F.2d 806, 815 (2d Cir.1986). Therefore, the Western District of Louisiana transcripts, in original form, are admissible even without an authenticating witness.

Moreover, because these original transcripts are admissible, duplicates would be admissible under Rule 1003. *See United States v. Grimmer,* 1999 WL 1012571, at *2 (2d Cir. Oct.14, 1999) (unpublished). Rule 1003 does list two exceptions, that the duplicate is not admissible if "(1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original." F.R.E. 1003.

 With respect to the first exception, Debtor did not claim that there is a question as to authenticity of the transcripts. He stated at the bankruptcy proceeding that AOS "[doesn't] have a witness who can attest to their copy being authentic. That's the problem I have ...." July 17, 2003 Bankr.Tr. (Dkt. No. 1, Appellant Ex. 5) at 15. In making these statements, Debtor simply demands that the documents be authenticated by an in-court witness, when in fact they are self-authenticating under the Rules. He objects to the procedure used, but does not object to the actual authenticity of the transcripts. Therefore, the first exception does not apply here.

Considering the second exception, it is not unfair to admit the duplicates, especially because the bankruptcy court noted that

Debtor had also listed these transcripts as a potential exhibit. July 17, 2003 Bankr. Tr. (Dkt. No. 1, Appellant Ex. 5) at 11. *See also In re McCauley*, 105 B.R. 315, 321 (E.D.Va.1989) (holding that state court transcripts ordering alimony and child support were "plainly admissible" under the F.R.E. in subsequent bankruptcy proceeding and objection to their admission was "baseless" considering both parties had listed it as an exhibit for the bankruptcy proceedings). Having enumerated them as an exhibit himself, Debtor should have been aware of their contents and able to object if they were not authentic or accurate.

Therefore, the bankruptcy court did not abuse its discretion in admitting the transcripts under Federal Rules of Evidence 902(4) and 1003.

#### (d) Violation of the Automatic Stay and Damages

*(i) Background*

The Debtor filed for Chapter 7 bankruptcy on February 13, 2002 in the Bankruptcy Court for the Northern District of New York. *See* Bankr.Filing (Dkt. No. 1, Appellee Ex. 2). Debtor contends that the following various post-petition acts by AOS constituted violations of the automatic stay which went into effect upon the filing of his bankruptcy petition.

On March 26, 2002, AOS filed an action in the Eastern District of New York seeking to recover $5,184.28 in attorney's fees and costs associated with the cancelled deposition of the Debtor that was to have taken place on February 13, 2002. *See* E.D.N.Y. Complaint (Dkt. No. 1, Appellant Ex. 16). Magistrate Gold denied AOS's

application, finding that the "application does not seek a recovery for the type of misconduct that implicates public policy, and the exception to the bankruptcy stay upon which it relies does not apply." *See In re Ball*, No. 02–MC–013, slip op. at 2 (E.D.N.Y. Apr. 15, 2002) [8].

On or about April 26, 2002, AOS filed a motion in the General Court of Justice, Superior Court Division, Halifax County, State of North Carolina ("State Court"), seeking to have the *pro hac vice* admission of the Debtor revoked in the civil litigation entitled *Jack H. Winslow Farms, Inc. v. T. Carl Dedmon et al.*, a lawsuit commenced in the State Court against AOS. *See* P.H.V. Motion (Dkt. No. 1, Appellant Ex. 15). On August 30, 2002, AOS filed an amended motion in the State Court which again sought to have the *pro hac vice* admission of the Debtor revoked. *See* Amended P.H.V. Motion (Dkt. No. 1, Appellant Ex. 17). The bankruptcy court found that the Debtor had been admitted to appear *pro hac vice* in the State Court by order, dated March 25, 2002. *See In re Ball*, No. 02–80127, slip op. at 5 (Bankr.N.D.N.Y. Feb. 11, 2004).[9] Debtor disputes this and states that he was admitted *pro hac vice* on March 25, 1999.

On August 15, 2002, Debtor filed a motion in the bankruptcy court for an order pursuant to § 362(h) of the U.S. Bankruptcy Code, 11 U.S.C. §§ 101–1330 (" § 362(h)") and the bankruptcy court's civil contempt powers seeking actual and punitive damages for these alleged violations of the automatic stay by AOS. *See* § 362(h) Motion (Dkt. No. 1, Appellant Ex. 12).

In its Decision dated February 11, 2004, the bankruptcy court found that AOS did

---

**8.** This slip opinion is designated on appeal as Appellant's Exhibit 14. (Dkt. No. 1, Appellant Ex. 14).

**9.** This slip opinion is designated on appeal as Appellant's Exhibit 3. (Dkt. No. 1, Appellant Ex. 3).

technically violate the automatic stay by filing its motion in the Eastern District of New York on March 26, 2002. *See In re Ball*, No. 02–80127, slip op. at 6 (Bankr. N.D.N.Y. Feb. 11, 2004). The bankruptcy court next found that "the Debtor's *pro hac vice* admission was not granted until March 25, 2002, approximately a month after the Debtor filed his petition," and as a result AOS's action did not violate 11 U.S.C. § 362(a)(1) [10] (" § 362(a)(1)") since the proceedings could not have been commenced pre-petition, and did not violate 11 U.S.C. § 362(a)(3) [11] (" § 362(a)(3)") since the alleged property, the *pro hac vice* admission, was acquired post-petition. *Id.* at 6–7. Therefore, the bankruptcy court concluded that AOS's attempts to revoke Debtor's *pro hac vice* admission in North Carolina did not constitute a violation of the automatic stay. Turning to the measure of damages, the bankruptcy court concluded that Debtor "presented no evidence of actual damages" and therefore was not entitled to any award of actual damages. *Id.* at 8–9. Lastly, the bankruptcy court found that there was no evidence to indicate that AOS's actions were malicious and in bad faith, and therefore no basis to award punitive damages. *Id.* at 9.

Debtor contends that the bankruptcy court erred (1) in refusing to award damages under the bankruptcy court's contempt powers; (2) in finding that Debtor incurred no damages as a result of the alleged violations of the automatic stay; and (3) in finding that actions to revoke Debtor's *pro hac vice* admission did not constitute a violation of the automatic stay.

*(ii) Discussion*

The Bankruptcy Code provides for an automatic stay to protect the property of the bankruptcy estate from the time a bankruptcy petition is filed. 11 U.S.C. § 362(a). Property of the estate includes all legal or equitable interests of the debtor in property as of the commencement of the case. 11 U.S.C. § 541. Where the automatic stay is willfully violated, the individual injured by such violation shall recover actual damages and may recover punitive damages in the appropriate circumstances. 11 U.S.C. § 362(h).

The law in this Circuit is clear that sanctions for violations of the automatic stay pursuant to § 362(h) are only appropriate as to debtors who are natural persons. *See In re Chateaugay Corp.*, 920 F.2d 183, 186–187 (2d Cir.1990). "For other debtors, contempt proceedings are the proper means of compensation and punishment for willful violations of the automatic stay." *Id.* at 187. Thus, where a debtor is a corporation, sanctions can be imposed only as a result of a contempt finding, on a showing of maliciousness or a lack of a good faith argument and belief that the party's action were not in violation of the stay. *See In re Crysen/Montenay Energy Co.*, 902 F.2d 1098, 1104 (2d Cir.1990).

Generally, the courts have held that the remedial purpose of 11 U.S.C. § 362(h) warrants a standard that makes it easier to impose sanctions than pursuant to contempt proceedings. A contempt proceeding requires a finding of maliciousness or lack of a good faith argument and belief that the party's actions were not in viola-

---

10. § 362(a)(1) provides that a bankruptcy petition operates as a stay of the commencement of a judicial action or proceeding against the debtor "that was or could have been commenced before the commencement of the case . . . ." 11 U.S.C. § 362(a)(1).

11. § 362(a)(3) provides that a bankruptcy petition operates as a stay of "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3).

tion of an automatic stay, whereas under 11 U.S.C. § 362(h), the statute provides for "damages upon a finding that the defendant knew of the automatic stay and that the defendant's actions which violated the stay were intentional." *In re Crysen/Montenay Energy Co.*, 902 F.2d at 1104–05.

*(a) The Bankruptcy Court's Contempt Powers*

Debtor contends that the bankruptcy court limited the proceedings to consideration of relief under § 362(h) and ruled that contempt was not available as a form of relief to the individual debtor. A review of the record before this Court shows that while the bankruptcy court did question the legitimacy and intelligence of an individual debtor pursuing a contempt charge over actual and punitive damages under § 362(h) [12], the bankruptcy court did not rule that Debtor could not present evidence of to meet the standard of civil contempt.[13] *See* Dec. 12, 2002 Bankr.Tr. (Dkt. No. 1, Appellant Ex. 22) at 2–5, 8.

In its decision dated February 11, 2004, the bankruptcy court did not issue any relief to Debtor under its civil contempt powers, instead analyzing the claim under the rubric of § 362(h) pursuant to case law. *See In re Ball*, No. 02–80127 (Bankr. N.D.N.Y. Feb. 11, 2004). The bankruptcy court found that AOS's conduct did not rise to the level of maliciousness required for punitive damages under § 362(h), finding that the act of filing a motion in the

Eastern District of New York seeking costs and attorney's fees was made with a good faith argument. *Id.* at 9.

Since the Debtor's motion for contempt requested damages for alleged violations of the automatic stay, the bankruptcy court did not err in construing the motion in accordance with the relief requested. Debtor acknowledged that the standard for awarding sanctions for contempt, namely maliciousness on the part of AOS, is roughly equivalent to the standard of awarding punitive damages.[14] In light of the bankruptcy court's conclusion that AOS's action lacked maliciousness, it leaves no doubt that the bankruptcy court in deciding a contempt motion would exercise its discretion to do what it has already done: deny damages. On this record, we cannot say that such a denial would be an abuse of discretion.

■■■ Based on the bankruptcy court's determination that AOS did not act maliciously and possessed a good faith argument in its technical violation of the automatic stay, the bankruptcy court did not err in failing to hold AOS in contempt of court.

*(b) Measure of Damages*

■■■ Debtor next contends that the bankruptcy court erred in finding that Debtor incurred no damages as a result of alleged violations of the automatic stay. *See In re Ball*, No. 02–80127, slip. op. at 8–

---

**12.** At the July 17, 2003 trial, Judge Gerling commented, "[i]s there some reason why you think that contempt gives you a better remedy than actual or punitive damages as provided for in § 362(h)?" July 17, 2003 Bankr.Tr. (Dkt. No. 1, Appellant Ex. 23) at 47.

**13.** At the December 12, 2002 hearing, Judge Gerling stated that "I am not ruling on your request for contempt." Dec. 12, 2002 Bankr. Tr. (Dkt. No. 1, Appellant Ex. 22) at 2.

**14.** At the July 13, 2003 trial, after being asked by the court why contempt was a better remedy than damages under § 362(h), Debtor responded, "But I've asked for [contempt]. I think it's actually a higher standard than what I'm seeking for punitive damages under § 362(h)." July 17, 2003 Bankr.Tr. (Dkt. No. 1, Appellant Ex. 23) at 47.

9 (Bankr.N.D.N.Y. Feb. 11, 2004). For § 362(h) purposes, actual damages should be awarded only if there is concrete evidence supporting the award of a definite amount. *See In re Sumpter,* 171 B.R. 835, 844 (Bankr.N.D.Ill.1994). "The party seeking damages pursuant to § 362(h) has the burden of proving what damages were incurred and what relief is appropriate." *In re Sucre,* 226 B.R. 340, 349 (Bankr. S.D.N.Y.1998); *In re Dominguez,* 312 B.R. 499, 508 (Bankr.S.D.N.Y.2004). A damages award cannot be based on mere speculation, guess or conjecture. *See In re Sumpter,* 171 B.R. at 844; *In re Clarkson,* 168 B.R. 93, 95 (Bankr.D.S.C.1994) ("The moving party bears the burden of proof in order to prevail on an action for violation of the automatic stay and must prove his case by clear and convincing evidence.").

■ A bankruptcy court's decision regarding the amount of damages is a factual finding and will not be disturbed unless the finding is clearly erroneous. *See In re Sucre,* 226 B.R. 340, 349 (Bankr.S.D.N.Y. 1998); *In re Fugazy Express, Inc.,* 124 B.R. 426, 430 (S.D.N.Y.1991); *Archer v. Macomb County,* 853 F.2d 497, 499 (6th Cir.1988).

A review of the record shows no attempts by Debtor to provide any documentation or testimony at the July 17, 2003 trial as to the damages he suffered as a result of any violation of the automatic stay. Debtor's memorandum of law contains no references to any actual damages caused by the violation of the automatic stay. Consequently, the Debtor has failed to satisfy his burden of establishing that the bankruptcy court's findings of fact are clearly erroneous.

*(c) Debtor's Pro Hac Vice Admission*

Debtor next contends that the bankruptcy court erred in finding that actions by AOS to revoke Debtor's *pro hac vice* admission in North Carolina did not constitute a violation of the automatic stay. As Debtor highlights, AOS's amended complaint seeking to revoke Debtor's *pro hac vice* admission dated August 30, 2001 states that Debtor was admitted *pro hac vice* on March 25, 1999. *See* AOS Amended Motion (Dkt. No. 1, Appellant Ex. 17) at 1. This conflicts with the bankruptcy court's finding that Debtor was admitted *pro hac vice* on March 25, 2002. *See In re Ball,* No. 02–80127, slip op. at 6 (Bankr. N.D.N.Y. Feb. 11, 2004). As a result of this finding, the bankruptcy court concluded that Debtor's *pro hac vice* admission occurred after his bankruptcy petition was filed and therefore AOS's actions to revoke Debtor's *pro hac vice* admission did not constitute violations of the automatic stay pursuant to 11 U.S.C. § 362(a)(1) and § 362(a)(3). *Id.* at 7–8. Debtor offers no other evidence of the correct date of his *pro hac vice* admission.

■ Regardless of the exact date of Debtor's *pro hac vice* admission, AOS's attempt to have Debtor's *pro hac vice* admission revoked does not constitute a violation of the automatic stay.

§ 362(a)(1) provides that a bankruptcy petition shall operate as an automatic stay of "the commencement or continuation, including the issuance or employment or process, of a judicial, administrative, or other action or proceeding against the debtor." 11 U.S.C. § 362(a)(1). § 362(a)(3) is the only other subsection that might have applicability to the facts herein. § 362(a)(3) provides that a bankruptcy petition operates as a stay of "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3).

■ § 362(b)(4) expressly excepts certain post-petition proceedings from the op-

eration of the automatic stay, including any action brought before a governmental regulatory agency to enforce its police or regulatory powers. 11 U.S.C. § 362(b)(4). The state power of licensure, which safeguards the public from wrongful future conduct of corrupt or incompetent professionals, falls squarely within the purview of the government regulatory exemption to the automatic stay. *See In re Friedman & Shapiro*, 185 B.R. 143, 145 (S.D.N.Y. 1995); *In re North*, 128 B.R. 592, 600–01 (Bankr.Vt.1991). Specifically, courts have found that attorney disciplinary proceedings are not subject to the automatic stay. *See In re Wade*, 115 B.R. 222, 228 (9th Cir. BAP 1990); *In re Friedman & Shapiro*, 185 B.R. at 145; *In re Williams*, 158 B.R. 488, 491 (Bankr.Idaho 1993); *In re Hanson*, 71 B.R. 193, 194 (Bankr.E.D.Wis. 1987).

The fact that the attempted revocation of Debtor's *pro hac vice* admission originated from AOS and not the North Carolina State Court itself is not controlling. In *In re McMullen*, 386 F.3d 320, 328 (1st Cir.2004), the court found that a creditor's post-petition filing of a complaint to the state Division of Registration for Real Estate Agents for possible license revocation did not constitute the commencement of a proceeding under § 362(a)(6). *In re McMullen*, 386 F.3d 320, 328 (1st Cir. 2004). The court based its finding on the conclusion that § 362(a)(1) should not "dissuade private parties from providing governmental regulators with information which might require enforcement measures to protect the public . . . ." *Id.*

In the present case, any action by the State Court of North Carolina to determine the *pro hac vice* status of a litigant before it qualifies as a valid exercise of the state's police and regulatory powers and is thus exempted from the automatic stay. The fact that the possible revocation of the admission was initiated by a creditor is immaterial since it does not alter the purpose of the determination by the court—to protect the public from professional misconduct. Therefore, the actions taken by AOS in seeking to have the Debtor's *pro hac vice* admission revoked did not constitute a violation of the automatic stay pursuant to § 362(a)(1) and § 362(a)(3).

### (e) Violation of Disciplinary Rule 5–102 and 2–110

*(i) Background*

Debtor asks this Court to reverse the rulings of the bankruptcy court denying Debtor's post-trial motion to disqualify AOS's counsel.

Prior to the July 17, 2003 trial, AOS listed Mr. Eyres and Mr. Morris, both attorneys of record for AOS, as potential witnesses. *See* AOS's Witness List (Dkt. No. 1, Appellant Ex. 11). At the July 17, 2003 trial, Debtor made a pretrial motion seeking to strike any AOS attorney from AOS's witness list, citing the New York Code of Professional Conduct, Disciplinary Rule 5–102 (22 NYCRR § 1200.21) ("D.R.5–102"). *See* July 17, 2003 Bankr. Tr. (Dkt. No. 1, Appellant Ex. 5) at 3–4. Based on the belief of AOS's counsel that the issue was moot since they planned only to submit the record that was produced before the United States District Court in the Western District of Louisiana, dated January 31, 2001, they submitted the record and did not call either AOS attorney as a witness. *Id.* at 7–8, 31–32.

On October 28, 2003, Debtor submitted an Order to Show Cause, requesting the *pro hac vice* admission of AOS's counsel be revoked for their alleged violations of D.R. 5–102(a) and that they therefore be required to withdraw pursuant to D.R. 2–

110(b)(2) [15]. *See* October 28, 2003 O.S.C. (Dkt. No. 1, Appellant Ex. 19).

On November 20, 2003, the court heard arguments regarding the Order to Show Cause. The bankruptcy court denied Debtor's motion, finding that the continued representation of AOS by Mr. Eyres and Mr. Morris was not a violation of the disciplinary rules and admonished the Debtor that it perceived the request to be an attempt to delay the submission of his post-trial memorandum of law. *See* Nov. 20, 2003 Bankr.Tr. (Dkt. No. 1, Appellant Ex. 20) [16] at 17–18. Debtor now appeals this determination.

*(ii) Discussion*

D.R. 5–102 "Lawyers as Witnesses" requires that a lawyer not act or accept employment as an advocate on issues of fact before any tribunal "if the lawyer knows or it is obvious that the lawyer ought to be called as a witness on a significant issue on behalf of the client". D.R. 5–102(a). The rule also requires that "if, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that the lawyer ought to be called as a witness on a significant issue on behalf of the client, the lawyer shall not serve as an advocate on issues of fact before the tribunal." D.R. 5–102(c).

 New York State's test for whether an attorney must withdraw or face disqual-

ification turns on more than the fact that an attorney of record might be called as a witness. In *S & S Hotel Ventures Ltd. Partnership v. 777 S.H. Corp.*, 69 N.Y.2d 437, 445, 515 N.Y.S.2d 735, 508 N.E.2d 647 (N.Y.1987), the court held that the mere fact that an attorney was involved in a transaction at issue, or that his proposed testimony would be relevant or even "highly useful," is insufficient to warrant disqualification.[17] Under *S & S Hotel Ventures*, the critical question is whether the subject testimony is "necessary," taking into account such factors as "the significance of the matters, weight of the testimony, and availability of other evidence." *Id.* at 446, 515 N.Y.S.2d 735, 508 N.E.2d 647. *See also SMI Indus. Canada Ltd. v. Caelter Indus. Inc.*, 586 F.Supp. 808, 817 (N.D.N.Y.1984) (Munson, C.J.) (finding that "[t]he phrase 'ought to be called as a witness' has been narrowly construed to refer to an attorney who has crucial information in his possession which must be divulged in the course of a trial."). If the testimony is "necessary" then the attorney "ought to" testify and must be disqualified.

 In addition, because motions to disqualify are often made for tactical purposes, they are disfavored and subject to strict scrutiny. *S & S Hotel Ventures*, 69 N.Y.2d at 443, 515 N.Y.S.2d 735, 508 N.E.2d 647. The proponent of disqualification bears a "heavy burden" of proof to

---

**15.** D.R. 2–110 "Withdrawal From Employment" requires an attorney in a New York court to withdraw from employment if "[t]he lawyer knows or it is obvious that continued employment will result in a violation of a Disciplinary Rule." D.R. 2–110(b)(2).

**16.** This exhibit is the transcript from proceedings held in the Northern District of New York Bankruptcy Court before Judge Gerling on November 20, 2003. This transcript is designated on appeal as Appellant's Exhibit 20.

**17.** *See also Rosefield v. Orentreich*, 1998 WL 567750, at *4–6 (S.D.N.Y. Sept.4, 1998) (explaining that the "test for whether [an attorney] must withdraw or face disqualification turns on more than the fact that [a party] intends to call [the attorney] as a trial witness"); *Leonardo v. Leonardo*, 297 A.D.2d 416, 418, 746 N.Y.S.2d 90 (2002) (refusing to disqualify attorney that was not a necessary witness).

show that counsel's testimony is necessary. *First Interregional Advisors Corp. v. Wolff,* 956 F.Supp. 480, 489 (S.D.N.Y.1997). Finally, the New York Court of Appeals instructs that the Code of Professional Conduct is to be construed flexibly so as to provide "guidance for the courts in determining whether a case would be tainted by the participation of an attorney or a firm." *S & S Hotel Ventures,* 69 N.Y.2d at 444–45, 515 N.Y.S.2d 735, 508 N.E.2d 647.

Debtor does not allege that either Mr. Eryes or Mr. Morris, counsel for AOS, were necessary witnesses in contending that they violated D.R. 5–102. He suggests the mere act of placing their names on the witness list constituted a violation of D.R. 5–102.

 It is well settled in the Second Circuit that "a motion to disqualify an attorney is addressed to the discretion of the [trial] court, and a ruling thereon will not be overturned absent a determination of abuse of discretion." *Cheng v. GAF Corp.,* 631 F.2d 1052, 1055 (2d Cir.1980), vacated on other grounds, 450 U.S. 903, 101 S.Ct. 1338, 67 L.Ed.2d 327 (1981); *Moss v. Moss Tubes,* 1998 WL 641362, at *3–4, 1998 U.S. Dist. LEXIS 14656, at *9–10 (N.D.N.Y. Sept. 5, 1998) (McAvoy, C.J.). Based on the record before it, there is no abuse of discretion in ruling not to disqualify AOS's counsel.

No testimony was ever taken from Mr. Morris or Mr. Eyres at the July 13, 2003 trial. While Mr. Morris' testimony was relevant in that he had witnessed the proceedings before the United States District Court in the Western District of Louisiana, his testimony was unnecessary since a ver-batim transcript of those proceedings existed and was offered as the only evidence by AOS at the July 13, 2003 trial.[18] In fact, the determination of the bankruptcy court of whether or not the Debtor's sanction was dischargeable under 11 U.S.C. § 523(a)(6) was confined to that record. *See In re Ball,* No. 02–60810, slip op. at 7 (Bankr.N.D.N.Y. Feb. 10, 2004).

Therefore, this court determines that neither Mr. Morris nor Mr. Eyres were necessary witnesses at the July 13, 2003 trial and the bankruptcy court's finding not to revoke their *pro hac vice* admission was not an abuse of its discretion.

## (f) Violation of Bankruptcy Code Rule 9022–1

Northern District of New York Bankruptcy Local Rule 9022–1 provides that:

(a) Whenever notice of entry of a contested order or judgment is required by FRBP 902, the party submitting said order or judgment shall provide the clerk with a sufficient number of additional copies of such order or judgment, a list of the names and addresses of the parties contesting the entry thereof, including the name and address of the submitting party, and the names and addresses of their respective attorneys.

(b) Noncompliance. Failure to comply with subsection (a) is cause for the court to vacate its oral order and deny the relief requested.

At the July 17, 2003 trial, Debtor requested that Judge Gerling vacate an oral order issued on December 12, 2002 deny-

---

**18.** Mr. Eyres was placed on the AOS Witness List to possibly testify with regard to Debtor's claims regarding possible violations of the automatic stay. Since Debtor requested damages from AOS's counsel as a result of the violations, Mr. Eyres was a party to the pro-ceeding. Mr. Morris was additionally on the Witness List to testify concerning the sanctions imposed on Debtor by the United States District Court in the Western District of Louisiana.

ing Debtor's motion with regard to striking AOS's pleadings and revoking the *pro hac vice* admission of AOS's counsel before the bankruptcy court as a result of not being properly served a written copy of the order in compliance with Local Rule 9022–1. *See* July 17, 2003 Bankr.Tr. (Dkt. No. 1, Appellant Ex. 5) at 47–49. Debtor now appeals the bankruptcy's court refusal to vacate its prior oral order.

This Court reads Local Rule 9002–1(b) to provide the bankruptcy court with discretion in deciding to vacate its prior oral order. Under the facts of this case, the bankruptcy court did not abuse its discretion.

Debtor was present at the December 12, 2002 hearing and presumably heard the oral order and the announced deadline for the written order. The order in question was entered into the bankruptcy court's docket on December 27, 2002 (Dkt. No. 1, BK Dkt., Ex. 15). Courts have found that parties have an affirmative duty to monitor the bankruptcy dockets to inform themselves of the entry of orders. *See In re Delaney*, 29 F.3d 516, 518 (9th Cir.1994). "Notification by the clerk is merely for the convenience of litigants." *In re Tutino*, 1991 WL 144199, at *2, 1991 U.S. Dist. LEXIS 10210, at *5 (N.D.N.Y. July 22, 1991) (McCurn, C.J.) (quoting the Advisory Committee Notes to Federal Bankruptcy Rule 9022).

The Debtor fails to articulate any prejudice resulting from his lack of notice of the written order. Therefore, the Bankruptcy Court did not abuse its discretion in refusing to vacate its prior oral order.

## III. CONCLUSION

Accordingly, it is hereby

ORDERED that the February 10, 2004 Memorandum–Decision and Order of the Bankruptcy Court is **AFFIRMED**; and it is further

ORDERED that the February 11, 2004 Memorandum–Decision and Order of the Bankruptcy Court is **AFFIRMED**, and it is further

ORDERED that the Clerk of the Court shall serve copies of this order by regular mail upon the parties to this action.

IT IS SO ORDERED.